# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 14-3390

NATHAN YANCY, APPELLANT,

V.

ROBERT A. MCDONALD,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued January 12, 2016                                   Decided February 26, 2016)

*Jenna E. Zellmer* of Providence, Rhode Island, for the appellant.

*Shereen M. Marcus*, with *Leigh A. Bradley*, General Counsel, *Mary Ann Flynn*, Assistant General Counsel, *Christopher W. Wallace*, Deputy Assistant General Counsel, and *Tracy K. Alsup* on the brief, all of Washington, D.C., for the appellee.

Before LANCE, DAVIS, and GREENBERG, *Judges*.

LANCE, *Judge*: The appellant, veteran Nathan Yancy, appeals through counsel an August 21, 2014, decision of the Board of Veterans' Appeals (Board) that, in part, denied entitlement to increased disability ratings for a foot disability.[1]  Record (R.) at 2-36.  On September 18, 2015, this case was submitted to a panel for review, and on October 20, 2015, the Court ordered the parties to file supplemental memoranda of law.  The parties filed their supplemental memoranda on November 19, 2015.

For the reasons that follow, the Court will vacate those parts of the Board's decision addressing Mr. Yancy's various foot disabilities, including the proper disability ratings for pes

---

[1] The Board also remanded Mr. Yancy's claim for entitlement to service connection for vasovagal syncope, and the Court lacks jurisdiction over that matter.  *See* 38 U.S.C. §§ 7252(a), 7266(a); *Howard v. Gober*, 220 F.3d 1341, 1344 (Fed. Cir. 2000).  In addition, the Board's determinations that Mr. Yancy is entitled to a 30% disability rating for bilateral pes planus and to a separate rating of 10% for right knee instability constitute favorable findings, which the Court cannot disturb.  *See Medrano v. Nicholson*, 21 Vet.App. 165, 170 (2007).

planus and hallux valgus, and to entitlement to referral for extraschedular consideration, and it will remand those matters for further proceedings. As Mr. Yancy presents no argument concerning the Board's denial of entitlement to service connection for an enlarged heart or to the Board's denial of increased schedular evaluations for status post left knee medial meniscectomy, left knee instability, right knee retropatellar irritation, right knee instability, a right eardrum rupture, small bilateral varicoceles, and an umbilical hernia, the Court holds that Mr. Yancy has abandoned those issues and will therefore dismiss the appeal as to those matters. *See Pederson v. McDonald*, 27 Vet.App. 276, 285 (2015) (en banc).

## I. BACKGROUND

Mr. Yancy served in the U.S. Army from November 1983 to August 1993 and from May 1995 to October 2006. R. at 521, 631, 673. In June 2006, he filed a claim for entitlement to service connection for bilateral foot disabilities, among other conditions,[2] specifically noting problems with his arches and bunions. R. at 630-39. In April 2008, the Cleveland, Ohio, VA regional office (RO) issued a decision granting entitlement to service connection for, inter alia, bilateral pes planus, assigning a 10% disability rating, and hallux valgus of the left and right great toes, assigning noncompensable ratings. R. at 509-22.

Mr. Yancy filed a Notice of Disagreement (NOD) in April 2009, which, in part, disputed the disability ratings assigned for his foot disabilities. R. at 463-71. In it, he stated that he was "unable to stand in one spot for long periods and in connection with the condition and pain in both knees," R. at 465, and that, "[d]ue to the current condition of [his] feet and knees, [he] ha[d] been unable to remain as physically active," R. at 466. In his NOD, he also sought entitlement to service connection for hemorrhoids, R. at 469-70, which the RO granted in a June 2010 decision, assigning a 10% disability rating, R. at 309-14. The RO issued a Statement of the Case in April 2011, R. at 211-49, and Mr. Yancy perfected his appeal to the Board in June 2011, R. at 181-203.

On August 21, 2014, the Board issued the decision here on appeal. R. at 2-36. In it, the Board discussed Mr. Yancy's foot disabilities, finding that he was entitled to an increased 30%

---

[2] In addition to Mr. Yancy's foot disabilities, he also requested service connection for left and right knee disabilities, an umbilical hernia, a collar bone injury, fainting, an enlarged heart, bilateral hip pain, a left eardrum rupture, rib pain, and complications of a vasectomy. R. at 635.

disability rating for his bilateral pes planus under 38 C.F.R. § 4.71a, diagnostic code (DC) 5276 (2015). R. at 20. In addition, the Board considered whether Mr. Yancy's bilateral hallux valgus warranted increased disability ratings and whether he was entitled to additional ratings under other diagnostic codes. R. at 20-24. It determined, however, that Mr. Yancy did not have "severe" hallux valgus, warranting a compensable rating for that condition under DC 5280, that he did not meet the requirements for a separate compensable rating for hammertoe under DC 5282, and that he had not been diagnosed with weak foot (DC 5277), claw foot (DC 5278), Morton's disease (DC 5279), hallux rigidus (DC 5281), malunion or nonunion of the tarsal or metatarsal bones (DC 5283), or other foot injuries (DC 5284). *Id.* Finally, the Board determined that referral for extraschedular consideration was not warranted, as the various schedular ratings were adequate. R. at 28-30. This appeal followed.

## II. THE PARTIES' ARGUMENTS

Mr. Yancy raises two principal arguments on appeal. First, he contends that the Board failed to provide an adequate statement of reasons or bases to support its determination that he was not entitled to a disability rating greater than 30% for his foot disability. Appellant's Brief (Br.) at 6-10. Second, Mr. Yancy argues that the Board erred when it determined that referral for extraschedular consideration was not warranted. Appellant's Br. at 10-14.

### A. Foot Disability

With respect to his foot disability, Mr. Yancy asserts that the Board failed to adequately explain why he was not entitled to increased or additional disability ratings under DC 5281, for hallux rigidus, or DC 5284, for "Foot injuries, other." *Id.* at 7-10. He also argues that the Board clearly erred when it determined that he had not been diagnosed with hallux rigidus and thus failed to discuss whether he was entitled to a compensable rating pursuant to DC 5281. *Id.* at 6-7.

The Secretary responds that, "to the extent that it was error for the Board to find that [the a]ppellant was not diagnosed with hallux rigidus," any error is harmless, as DC 5281 instructs VA to rate severe hallux rigidus as hallux valgus and Mr. Yancy is already service connected for that condition. Secretary's Br. at 5-6. In addition, the Secretary states that "it is clear [that DC] 5284 is not applicable in this case," as the plain language of that DC "foreclose[s] rating a foot condition . . . that was not the result of an in-service injury." *Id.* at 7.

3

In his reply brief and supplemental memorandum of law, Mr. Yancy argues that DC 5284 is a catch-all provision, and so the Board erred in failing to discuss whether he was entitled to a disability rating under that DC. Appellant's Reply Br. at 2-4; Appellant's Supplemental (Supp.) Memorandum (Mem.) at 5-8. The Secretary, in contrast, contends that DC 5284, which on its face pertains to "Foot injuries, other," is applicable only to disabilities which are the result of traumatic injury and are not otherwise listed in the rating schedule. Secretary's Supp. Mem. at 3-7.

## B. Extraschedular Referral

With regard to the Board's determination that referral for extraschedular consideration was not warranted, Mr. Yancy contends that the Board failed to properly conduct the three-part analysis required by *Thun v. Peake*, 22 Vet.App. 111, 115 (2008), as it "fail[ed] to adequately compare all of [his] symptoms to those contemplated by the rating criteria," as required by the first *Thun* element, and did not discuss the second *Thun* element. Appellant's Br. at 12, 10-13. He also argues that the Board should have discussed whether he was entitled to extraschedular referral for his service-connected disabilities on a collective basis pursuant to *Johnson v. McDonald*, 462 F.3d 1362 (Fed. Cir. 2014). Appellant's Br. at 13-14.

The Secretary responds that the Board properly considered all of Mr. Yancy's foot symptoms and determined that they were adequately contemplated by the schedular criteria for the various foot disabilities. Secretary's Br. at 8-9. As a result, the Secretary contends that the Board correctly found that the first *Thun* element had not been met, and so it was not required to reach the second *Thun* element. *Id.* at 9. In addition, the Secretary argues that the Board was not required to discuss whether the combined effects of Mr. Yancy's disabilities warranted extraschedular referral, as that issue was not argued by Mr. Yancy below or reasonably raised by the record and Mr. Yancy cited no evidence on appeal demonstrating the collective impact of his service-connected disabilities. *Id.* at 10-11.

In his reply brief and supplemental memorandum of law, Mr. Yancy argues that the Board's failure to discuss the second *Thun* element impacted its analysis of the first *Thun* element, as "evidence which satisfies the second [*Thun*] element is also evidence which establishes that the severity of a claimant's disability is outside the scheduler criteria." Appellant's Reply Br. at 5; *see* Appellant's Supp. Mem. at 9-13 (arguing that the first and second *Thun* elements are intertwined). He also contends that *Johnson* requires the Board to discuss referral for extraschedular consideration

4

in *all* cases where a claimant has multiple service-connected disabilities, regardless of whether there is any evidence that those disabilities combine to produce additional symptoms. Appellant's Supp. Mem. at 13-17. Finally, he asserts that the Board's *Johnson* analysis should not be limited to the disabilities included in an appeal but also must consider disabilities whose ratings are not in appellate status. *Id.* at 18-19.

The Secretary argues that "each of the first two *Thun* elements involves a separate and distinct analysis by the RO or Board," and so "[r]eferral is not warranted . . . if either element is not met." Secretary's Supp. Mem. at 10, 7-13. He contends that, although the "two elements are interrelated," *id.* at 11, they are independent, and therefore "the RO or Board need not consider or discuss both elements in each and every case," *id.* at 12. Thus, "where the Board's analysis encompasses both elements, regardless of whether it was required to do so, any error with regard to the analysis of either element would be inconsequential if the analysis of the other element is adequate." *Id.*

With respect to *Johnson*, the Secretary argues that,

> if a claimant does not affirmatively raise a combined-effects theory or the record does not reasonably show a disability picture that is exceptional or unusual by any interplay among the service-connected disabilities, then the Board is under no obligation to undertake the impossible task of inventing or theoretically considering such interplay.

*Id.* at 14. In other words, "[t]he record would need to raise more than a mere observation that a claimant has more than one service-connected disability that is symptomatic in order to trigger an extraschedular analysis." *Id.* at 15. Finally, the Secretary "concedes that the Board does have jurisdiction to consider the symptomatology of" disabilities outside the scope of an appeal in the context of a *Johnson* analysis for the "limited purpose" of determining the "interplay of those other service-connected disabilities" with the disabilities encompassed by the appeal. *Id.* at 17.

### III. ANALYSIS

#### A. Foot Disability

Turning first to the Board's discussion of the proper schedular rating for Mr. Yancy's foot disability, the Court agrees that the Board failed to provide an adequate statement of reasons or bases to support its decision. *See* 38 U.S.C. § 7104(d)(1); *Allday v. Brown*, 7 Vet.App. 517, 527

5

(1995). Specifically, the Board failed to properly consider whether Mr. Yancy was entitled to disability ratings under DCs 5281 and 5284.

### 1. DC 5281

DC 5281 pertains to "Hallux rigidus, unilateral, severe," and requires that condition to be rated as severe hallux valgus under DC 5280. 38 C.F.R. § 4.71a, DC 5281. DC 5280, in turn, provides two separate paths to a 10% evaluation for hallux valgus: first, with "[o]peration with resection of metatarsal head;" and second, for severe hallux valgus "if equivalent to amputation of great toe." *Id.*, DC 5280.

In the decision on appeal, the Board summarily determined that Mr. Yancy was not entitled to a disability rating under DC 5281, as it found that he had not been diagnosed with hallux rigidus. R. at 23. As Mr. Yancy correctly notes, however, Appellant's Br. at 8, the record contains a November 8, 2010, medical opinion that includes a diagnosis of "[c]hronic metatarsalgia with pes planus and hallux valgus et rigidus on both sides." R. at 257, 255-58. The Board does not discuss this notation nor explain whether a diagnosis of "hallux valgus et rigidus" encompasses a diagnosis of hallux rigidus, thereby frustrating the Court's review of its decision. *See Allday*, 7 Vet.App. at 527.

Although the Secretary contends that any failure by the Board to consider entitlement to a disability rating under DC 5281 is harmless in light of Mr. Yancy's noncompensable ratings under DC 5280, Secretary's Br. at 5-6, his argument presupposes that any hallux ridigus suffered by Mr. Yancy is less than severe—a determination which the Board must make in the first instance.[3] *See Deloach v. Shinseki*, 704 F.3d 1370, 1380 (Fed. Cir. 2013) (recognizing that 38 U.S.C. § 7261(c) prohibits this "Court from making factual findings in the first instance"). Indeed, should the Board determine that Mr. Yancy suffers from severe hallux rigidus, he would be entitled to bilateral 10% disability ratings under DCs 5280 and 5281, rather than the noncompensable ratings currently assigned. *See* 38 C.F.R. § 4.71a, DCs 5280, 5281. Remand is therefore warranted for the Board to

---

[3] To be clear, the Court's review is frustrated by the Board's failure to adequately explain its determination as to whether Mr. Yancy suffered from hallux rigidus *at all*. As the Board never reached the question of whether a hallux rigidus disability was severe, the Court lacks the necessary factual predicate to determine whether the Board's error here was harmless. *See* 38 U.S.C. § 7261(b)(2) (requiring the Court to "take due account of the rule of prejudicial error"); *Shinseki v. Sanders*, 556 U.S. 396, 406 (2009); *Medrano v. Nicholson*, 21 Vet.App. 165, 171 n.1 (2007) ("Congress's prohibition of de novo factfinding and its mandate that the Court take due account of the rule of prejudicial error, two parts of the same statute, must both be given full effect.").

discuss whether the November 2010 medical opinion contains a diagnosis of hallux rigidus and, if so, whether it is severe. *See Tucker v. West*, 11 Vet.App. 369, 374 (1998) ("Where the Board has . . . failed to provide an adequate statement of reasons or bases[,] . . . a remand is the appropriate remedy.").

## 2. DC 5284

Similarly, the Court holds that the Board failed to provide an adequate statement of reasons or bases for its determination that Mr. Yancy was not entitled to an evaluation under DC 5284. *See* 38 U.S.C. § 7104(d)(1); *Allday*, 7 Vet.App. at 527. DC 5284 applies to "Foot injuries, other," and provides for 10%, 20%, and 30% evaluations for moderate, moderately severe, and severe disabilities, respectively. 38 C.F.R. § 4.71a, DC 5284. Recently, in *Copeland v. McDonald*, the Court considered the meaning of the word "other" as used in DC 5284. 27 Vet.App. 333, 337-38 (2015). The Court held that, "as a matter of law, DC 5284 does not apply to the eight [other] foot conditions specifically listed in § 4.71a," and so listed conditions could not be rated by analogy under that DC. *Id.* at 338. The Court has not, however, addressed the meaning of the word "injury" under DC 5284 or whether unlisted conditions may be rated by analogy under that DC.

"The starting point in interpreting a statute [or regulation] is its language." *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993); *see Smith v. Brown*, 35 F.3d 1516, 1523 (Fed. Cir. 1994) ("The canons of construction of course apply equally to any legal text and not merely to statutes."). "Where a statute's language is plain, and its meaning clear, no room exists for construction. There is nothing to construe." *Gardner v. Derwinski*, 1 Vet.App. 584, 587-88 (1991), *aff'd sub nom. Brown v. Gardner*, 513 U.S. 115 (1994). "In the absence of an express definition, words are given their ordinary meaning," *Prokarym v. McDonald*, 27 Vet.App. 307, 310 (2015) (citing *Terry v. Principi*, 340 F.3d 1378, 1382-83 (Fed. Cir. 2003)), but statutes and regulations "must be considered as a whole and in the context of the surrounding statutory [and regulatory] scheme," *Gazelle v. McDonald*, __ Vet.App. __, __, 2016 WL 386543, at *2 (Feb. 2, 2016) (citing *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991)).

"Injury" is not defined in § 4.71a. *Cf. O'Bryan v. McDonald*, 771 F.3d 1376, 1378 (Fed. Cir. 2014) ("Congress has not defined 'injury' or 'disease.'"). The underlying statutory and regulatory framework, however, generally distinguish between "injuries" and "diseases," *see, e.g.*, 38 U.S.C. § 1110 (providing for compensation "[f]or disability resulting from personal injury suffered or

disease contracted in line of duty"); 38 C.F.R. §§ 3.1, 3.4 (2015); *but see* 38 U.S.C. § 1155 ("The Secretary shall adopt and apply a schedule of ratings of reductions in earning capacity from specific injuries or combination of injuries."). "It is commonplace to consult dictionaries to ascertain a term's ordinary meaning." *Nielson v. Shinseki*, 23 Vet.App. 56, 59 (2009). Dictionaries define "injury" as "[p]hysical damage to a person's body," *Injury*, BLACK'S LAW DICTIONARY (9th ed. 2009), and "harm or hurt; usually applied to damage inflicted on the body by an external force," DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 941 (32d ed. 2012). The Court therefore holds that the plain meaning of the word "injury" limits the application of DC 5284 to disabilities resulting from actual injuries to the foot, as opposed to disabilities caused by, for example, degenerative conditions.

Even if the Court were to find the plain meaning of "injury" ambiguous, it would reach the same conclusion. When faced with an ambiguous regulation, an agency's interpretation is controlling unless it is "'plainly erroneous or inconsistent with the regulation[].'" *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (quoting *Robertson v. Methow Valley Citizen's Council*, 490 U.S. 332, 359 (1989)). "Deference to an agency's interpretation of its own regulations is broader than deference to the agency's construction of a statute, because in the latter case the agency is addressing Congress's intentions, while in the former it is addressing its own." *Cathedral Candle Co. v. U.S. Int'l Trade Comm'n*, 400 F.3d 1352, 1363-64 (Fed. Cir. 2005). "This high degree of deference applies even when that interpretation is first advanced during litigation." *Gray v. McDonald*, 27 Vet.App. 313, 321 (2015) (citing *Reizenstein v. Shinseki*, 583 F.3d 1331, 1335 (Fed. Cir. 2009)).

Here, the Secretary asserts that VA intended the word "injury," as used in DC 5284, to be limited to "the results of an external trauma rather than a degenerative process." Secretary's Supp. Mem. at 4 n.1. In support of this argument, he cites several VA General Counsel Precedent Opinions defining "injury" in other contexts. *Id.*; *see* VA Gen. Coun. Prec. 4-2002 (May 14, 2002) (defining "injury" to "to include harm not only from a violent encounter but also from exposure to a foreign substance, such as a vaccine"); VA Gen. Coun. Prec. 08-2001 (Feb. 26, 2001) ("'[I]njury' refers to the results of an external trauma, rather than a degenerative process."); VA Gen. Coun. Prec. 86-90 (Jul. 18, 1990) (defining "injury" for the purposes of 38 U.S.C. § 101(24) as "harm resulting from some type of external trauma," as distinguished "from some type of internal infection or degenerative process").

Although Mr. Yancy argues that *Delisle v. McDonald*, 789 F.3d 1372 (Fed. Cir. 2015), compels a broader reading of DC 5284, Appellant's Supp. Mem. at 3, the Court does not agree. In *Delisle*, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) interpreted the meaning of DC 5257, which pertains to knee disabilities, and held that it was not a "catch-all" provision. 789 F.3d at 1374-75. It doing so, it cited DC 5284 as an example of a "catch-all" provision, as it "excludes any reference to specific symptoms." *Id.* at 1375. The Federal Circuit did not, however, interpret the meaning of "injury" in DC 5284, and it specifically held that reviewing courts must "give[] meaning to both the title and the language" of a DC. *Id.* Thus, nothing in the Secretary's proffered interpretation of DC 5284 is contrary to *Delisle*.

Similarly, although Mr. Yancy generally asserts that "[l]imiting the application of DC 5284 only to *injuries* incurred in service eliminates compensation for veterans who are legitimately service connected due to a foot condition in service but do not suffer from one of the eight other enumerated foot disabilities," Appellant's Supp. Mem. at 5, he does not explain why any unlisted conditions could not be rated by analogy to one of the other foot DCs or, indeed, to DC 5284 by analogy. The Court therefore holds that the Secretary's interpretation of "injury" is not plainly erroneous or inconsistent with the regulation and is, therefore, entitled to deference. *See Auer*, 519 U.S. at 461.

Although the Court holds that DC 5284 is limited on its face to actual injuries, this holding does not end the Court's inquiry into whether the Board erred in this case. In *Hudgens v. Gibson*, the Court held that the plain language of DC 5055, which applies to prosthetic replacements of the knee joint, "does not apply to partial knee replacements." 26 Vet.App. 558, 560 (2014); *see* 38 C.F.R. § 4.71a, DC 5055. Nonetheless, the Court concluded that a partial knee replacement could be rated by analogy under DC 5055, provided that (1) the functions affected by the conditions were analogous; (2) the anatomical localizations of the conditions were analogous; and (3) the symptomatologies of the conditions were analogous. *Id.* at 563; *see Lendenmann v. Principi*, 3 Vet.App. 345, 350-51 (1992) (discussing the three factors VA must consider to determine "whether a listed disease or injury is "closely related" to [a] veteran's ailment); 38 C.F.R. §§ 4.20, 4.27 (2015). Thus, as in *Hudgens*, although the plain language of DC 5284 limits its application to

disabilities resulting from actual injuries to the foot, nothing prevents the Board from rating closely related conditions by analogy under that DC.[4]

Here, the Board tersely determined that Mr. Yancy had not been diagnosed with "other foot injuries ([DC] 5284)," R. at 23, and Mr. Yancy does not challenge this finding, *see Cromer v. Nicholson,* 19 Vet.App. 215, 217 (2005) ("[I]ssues not raised on appeal are considered abandoned."); *aff'd*, 445 F.3d 1346 (Fed. Cir. 2006). Mr. Yancy, however, has been diagnosed with conditions not explicitly listed in the rating schedule, including calcaneus foot deformity and heel spurs, and those conditions thus may be rated by analogy. *See* 38 C.F.R. §§ 4.20, 4.27; *cf. Copeland*, 27 Vet.App. at 337 ("[W]hen a condition is specifically listed in the Schedule, it may not be rated by analogy."). The Board did not discuss whether Mr. Yancy's unlisted conditions could be rated by analogy pursuant to DC 5284, and its failure to do so renders its statement of reasons or bases inadequate, requiring remand. *See Tucker*, 11 Vet.App. at 374; *Allday*, 7 Vet.App. at 527.

As the Board failed to provide an adequate statement of reasons or bases to support its denial of increased schedular disability ratings for Mr. Yancy's foot disability, the Court will vacate the Board's determinations as to those matters and remand them for further proceedings consistent with this decision.

### B. Extraschedular Referral

With respect to the Board's determination that Mr. Yancy was not entitled to referral for extraschedular consideration pursuant to 38 C.F.R. § 3.321(b)(1), the Court again agrees that the Board failed to provide an adequate statement of reasons or bases to support its decision. *See* 38 U.S.C. § 7104(d)(1); *Allday*, 7 Vet.App. at 527.

### 1. Case Law Prior to Johnson

Generally, the Board is required to consider all issues raised by a claimant or reasonably raised by the evidence of record. *Robinson v. Peake*, 21 Vet.App. 545, 552 (2008), *aff'd sub nom. Robinson v. Shinseki*, 557 F.3d 1355 (Fed. Cir. 2009). Prior to the Federal Circuit's decision in *Johnson*, this Court clarified that the Board must consider referral for extraschedular consideration "[w]here there is evidence in the record that shows exceptional or unusual circumstances or where

---

[4] Counsel for the Secretary conceded as much at oral argument, although she speculated that "if it's not a condition caused by an injury, one of these other [DC]s would more likely be more analogous." Oral Arg. at 29:00.

the veteran has asserted that a schedular rating is inadequate." *Colayong v. West*, 12 Vet.App. 524, 536 (1999); *see also Thun*, 22 Vet.App. at 115 ("When either a claimant or the evidence of record suggests that a schedular rating may be inadequate, the Board must specifically adjudicate the issue of whether referral for an extraschedular rating is warranted."); *Smallwood v. Brown*, 10 Vet.App. 93, 98 (1997) (holding that the Board must address "the issue of whether an extra-schedular rating is warranted [when it] is reasonably raised by the Board's own factual findings"). Where, however, "§ 3.321(b)(1) [is] neither specifically sought by [the claimant] nor reasonably raised by the facts found by the Board," the Board is not required to discuss whether referral is warranted. *Dingess v. Nicholson*, 19 Vet.App. 473, 499 (2006), *aff'd*, 226 F. App'x 1004 (Fed. Cir. 2007).

Thus, when either the claimant or the record raises the issue of entitlement to extraschedular referral, the Board is required to undertake the three-part test set forth in *Thun*. 22 Vet.App. at 115; *see Anderson v. Shinseki*, 22 Vet.App. 423, 427 (2009) (clarifying that, although the Court in *Thun* identified three "steps," they are, in fact, necessary "elements" of an extraschedular rating). The first element in the inquiry is to determine whether "the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate." *Thun*, 22 Vet.App. at 115; *see Sowers v. McDonald*, __ Vet.App. __, __, 2016 WL 563055, at *4 (Feb. 12, 2016) ("The rating schedule must be deemed inadequate before extraschedular consideration is warranted."). This inquiry requires "a comparison between the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability." *Thun*, 22 Vet.App. at 115. "[I]f the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule, . . . and no referral is required." *Id.*

If the adjudicator determines that the first element is satisfied, the second part of the inquiry requires the adjudicator to "determine whether the claimant's exceptional disability picture exhibits other related factors," such as marked interference with employment or frequent periods of hospitalization. *Id.* at 116. Then, if the first two elements have been satisfied, the adjudicator must refer the claim to the Under Secretary for Benefits or the Director of the Compensation Service for a determination of whether an extraschedular rating is warranted. *Id.*

Essentially, the first *Thun* element compares a claimant's symptoms to the rating criteria, while the second addresses the resulting effects of those symptoms. *See Anderson*, 22 Vet.App. at

11

429 n.2 (holding that a "loss of hypothetical employment advancement opportunities and an inability to work . . . have little relevance to the threshold inquiry into the adequacy of the rating schedule"); *Thun*, 22 Vet.App. at 117 n.3 ("Evidence of a claimant's lost income . . . might be relevant . . . in the second or third steps of the analysis . . . , but unequivocally is not part of the threshold inquiry."). Thus, as the Secretary argues, Secretary's Supp. Mem. at 11, the first and second *Thun* elements, although interrelated, involve separate and distinct analyses. As the two inquiries are independent, an error with respect to one element does not necessarily affect the Board's analysis of the other element.[5] If either element is not met, then referral for extraschedular consideration is not appropriate. *Thun*, 22 Vet.App. at 116; *see also Anderson*, 22 Vet.App. at 427.

## 2. *The Effect of* Johnson

The discussion above applies to referral for extraschedular consideration based on the effects of a single service-connected disability. In *Johnson*, however, the Federal Circuit held that, contrary to the Secretary's interpretation, "§ 3.321(b)(1) provides for extra-schedular consideration based on the collective impact of multiple disabilities." 762 F.3d at 1365. Thus, where a claimant has multiple service-connected disabilities, the Federal Circuit held that those disabilities "may be considered together in referring [the claimant] for extra-schedular consideration." *Id.* The Federal Circuit reasoned that "[l]imiting referrals for extra-schedular evaluation to considering a veteran's disabilities individually ignores the compounding negative effects that each individual disability may have on the veteran's other disabilities." *Id.* at 1366.

Nothing in *Johnson* changes the long-standing principle that the issue of whether referral for extraschedular consideration is warranted must be argued by the claimant or reasonably raised by the record. Although Mr. Yancy argues that *Johnson* stands for the proposition that "[e]xtraschedular referral is always raised by the record when a veteran has multiple service-

---

[5] Although the first and second *Thun* elements involve separate factual questions, both inquiries require a full and accurate description of a claimant's disability picture. While an error in the Board's analysis of whether a claimant's symptoms are contemplated by the rating schedule may have no bearing on the Board's analysis of whether those symptoms result in related factors of the kind contemplated by § 3.321(b)(1), an error in the Board's findings regarding the nature and severity of a claimant's symptoms could affect the Board's analysis of both the first and second *Thun* elements. Therefore, where the Board addresses both the first and second *Thun* elements and the Court determines that the Board erred with respect to one of the elements, it must determine whether that error is prejudicial in light of the Board's analysis of the other element and its underlying factual findings regarding the claimant's disability picture. *See* 38 U.S.C. § 7261(b)(2); *Sanders*, 556 U.S. at 409.

12

connected disabilities," Appellant's Supp. Mem. at 13 (bold emphasis removed), *Johnson* does not make such a categorical holding. Rather, it provides only that "referral for extra-schedular evaluation *may* be based on the collective impact of [a] veteran's disabilities." *Johnson*, 762 F.3d at 1365 (emphasis added). The Court therefore holds that the Board is required to address whether referral for extraschedular consideration is warranted for a veteran's disabilities on a collective basis only when that issue is argued by the claimant or reasonably raised by the record through evidence of the collective impact of the claimant's service-connected disabilities. *See, e.g.*, *Thun*, 22 Vet.App. at 115; *Robinson*, 21 Vet.App. at 552.

Similarly, nothing in *Johnson* changes the Board's obligation to conduct the three-part analysis set forth in *Thun*. When considering whether referral is warranted based on the combined effects of a veteran's service-connected disabilities, the Board first must compare the veteran's symptoms with the assigned schedular ratings. If the schedular evaluations reasonably contemplate the veteran's symptomatology—including any symptoms resulting from the combined effects of multiple service-connected disabilities—then the first *Thun* step is not satisfied, and referral is not warranted. *See Thun*, 22 Vet.App. at 116. Conversely, if the schedular evaluations are not adequate, then the Board must proceed to the second element of the *Thun* analysis.

Finally, although *Johnson* requires the Board, in certain cases, to discuss the *collective* impact of a claimant's service-connected disabilities, it does not alter the Board's jurisdiction over *individual* schedular or extraschedular ratings. Although the Board must consider any combined effects resulting from *all* of a claimant's service-connected disabilities insofar as they impact the disability picture of the disabilities on appeal, it lacks jurisdiction to consider whether referral is warranted solely for any disability or combination of disabilities not in appellate status, just as it lacks jurisdiction to examine the proper schedular rating for a disability not on appeal. *See DiCarlo v. Nicholson*, 20 Vet.App. 52, 55 (2006) (holding that the Board lacks jurisdiction to make findings on issues that are not on appeal).

### 3. Application to Mr. Yancy's Case

Turning to the merits of the case, both parties agree that the Board failed to address whether Mr. Yancy was entitled to referral for extraschedular consideration for his service-connected disabilities on a collective basis. *See* Appellant's Br. at 13-14; Secretary's Br. at 10-11. At oral argument, Mr. Yancy's counsel conceded that he did not explicitly raise that issue below. Oral Arg.

at 16:02. Thus, the Board's failure to discuss referral for Mr. Yancy's disabilities on a collective basis is error only if that issue was reasonably raised by the record. *See, e.g.*, *Thun*, 22 Vet.App. at 115; *Robinson*, 21 Vet.App. at 552.

Here, as Mr. Yancy argues, the record contains evidence of the collective impact of his service-connected disabilities. *See* Appellant's Reply Br. at 7-8; Appellant's Supp. Mem. at 16-17. For example, in his June 2011 Substantive Appeal, Mr. Yancy stated that, "[d]ue to the current condition of [his] feet and knees, [he] ha[s] been unable to remain as physically active" and that he was not able to stand for longer than 15 to 20 minutes. R. at 199. At the same time, the record reflects that Mr. Yancy experienced "discomfort upon prolonged sitting" due to his service-connected hemorrhoids. R. at 310. Thus, the record reflects that Mr. Yancy cannot stand *or* sit for long periods of time as a result of his service-connected disabilities.

The Court therefore holds that the issue of entitlement to referral for extraschedular consideration based on Mr. Yancy's service-connected disabilities on a collective basis was reasonably raised by the record. As a result, the Board erred by failing to discuss the combined effects of Mr. Yancy's disabilities in its analysis of the first *Thun* element. Moreover, because the Board did not reach the second *Thun* element, the Court cannot hold that the Board's error was harmless. Accordingly, the Court will vacate the Board's determination that Mr. Yancy is not entitled to referral for extraschedular consideration and remand that matter for further proceedings.

C. Remand Instructions

On remand, the Board must determine whether the November 8, 2010, medical opinion includes a diagnosis of hallux rigidus and, if so, whether Mr. Yancy is entitled to an evaluation under DC 5281. The Board also must address whether Mr. Yancy's unlisted diagnoses entitle him to a rating by analogy under DC 5284. Finally, the Board must discuss whether the combined effects of Mr. Yancy's service-connected disabilities warrant referral for extraschedular consideration.

Mr. Yancy is free to submit additional evidence and argument, including the arguments raised in his briefs to this Court, in accordance with *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order), and the Board must consider any such evidence or argument submitted. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002). The Board shall proceed expeditiously, in

14

accordance with 38 U.S.C. §§ 5109B and 7112 (requiring Secretary to provide for "expeditious treatment" of claims remanded by Board or Court).

## IV. CONCLUSION

In light of the foregoing, those parts of the Board's August 21, 2014, decision denying entitlement to a disability rating greater than 30% for bilateral pes planus, to compensable disability ratings for hallux valgus of the left and right great toes, and to referral for extraschedular consideration are VACATED, and those matters are REMANDED for further proceedings consistent with this decision. The appeal is DISMISSED as to the Board's denial of entitlement to service connection for an enlarged heart and to increased schedular evaluations for status post left knee medial meniscectomy, left knee instability, right knee retropatellar irritation, right knee instability, a right eardrum rupture, small bilateral varicoceles, and an umbilical hernia.