# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 17-0082

RICHARD CHUDY, APPELLANT,

V.

PETER O'ROURKE,
ACTING SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided June 14, 2018)

*Zachary M. Stolz, Matthew J. Pimentel*, *Alyse E. Galoski*, and *Nicholas L. Phinney*, all of Providence, Rhode Island, were on the brief for the appellant.

*Meghan Flanz,* Interim General Counsel; *Mary Ann Flynn*, Chief Counsel; *Joan E. Moriarty*, Deputy Chief Counsel; and *Anita U. Ajenifuja,* all of Washington, D.C., were on the brief for the appellee.

Before SCHOELEN, PIETSCH, GREENBERG.

PER CURIAM: GREENBERG, *Judge*, filed a dissenting opinion.

The appellant, Richard Chudy, appeals through counsel, a December 7, 2016, Board of Veterans' Appeals (Board) decision that, in part, declined to refer his bilateral hearing loss claim for extraschedular consideration. Record (R.) at 1-43.[1] For the reasons that follow, the Court will affirm that part of the Board's December 7, 2016, decision now on appeal.

In addition, the Board also denied entitlement to service connection for an eye disability and a disability characterized by blood in the urine, and to a compensable schedular rating for bilateral hearing loss. *Id.* As Mr. Chudy presents no argument as to those determinations, the Court will deem those matters abandoned and will accordingly dismiss the appeal as to those

---

[1] The Court lacks jurisdiction over the issues of entitlement to service connection for peripheral neuropathy of the bilateral upper and lower extremities, a cervical spine disability, a back disability, a bilateral knee disability, and a heart disability that the Board remanded, and the Court will not address them further. *See* 38 U.S.C. §§ 7252(a), 7266(a); *Howard v. Gober*, 220 F.3d 1341,1344 (Fed. Cir. 2000). In addition, the Board's award of service connection for rhinitis, folliculitis and acne are favorable determinations that the Court may not disturb. *See Medrano v. Nicholson*, 21 Vet.App 165, 170 (2007).

issues. *See Pederson v. McDonald*, 27 Vet.App. 276, 283 (2015) (en banc) (holding that, where an appellant abandons an issue or claim, the Court will not address it).

## I. BACKGROUND

Mr. Chudy served in the U.S. Navy from December 1968 to November 1972. R. at 485. In a June 2004 rating decision, the Milwaukee VA regional office (RO) awarded service connection for left ear hearing loss and assigned a noncompensable rating, effective January 31, 2003. R. at 1130-39. That same month, the RO denied entitlement to service connection for right ear hearing loss. R. at 1114-29. Mr. Chudy did not appeal the denial.

In May 2005, Mr. Chudy was treated for pressure in his ears, especially on the left side. R. at 2756. The VA physician assessed rhinitis and noted that an allergy consultation would be obtained for possible mold or fungal sensitivities. *Id*. He attributed Mr. Chudy's ear pressure to nasal inflammation and stated that he did not suspect any primary otologic disease. *Id*.

In December 2010, Mr. Chudy filed an increased-rating claim for left ear hearing loss and an application to reopen his claim for service connection for right ear hearing loss. R. at 1013.

According to a February 2011 private medical record, Mr. Chudy reported having had extensive postservice work experience but now was enjoying his retirement on his 50-acre wildlife retreat in Scandinavia, Wisconsin. R. at 969. He reported that he did not think his hearing was a problem and was not convinced he needed amplification. *Id*.

Mr. Chudy underwent a VA medical examination in April 2011. R. at 936-40. The examiner noted a history of dizziness and vertigo as a reaction to medications for PTSD, but "now [experiencing dizziness or vertigo] just with rising quickly." R. at 937. Mr. Chudy also reported wax build-up. *Id*. On examination, the ear canals were clear and the tympanic membranes (TMs) were unremarkable bilaterally. R. at 938. The examiner stated that Mr. Chudy experienced no significant effects on occupation or usual daily activities. R. at 939.

In a June 2011 rating decision, the RO denied a compensable rating for left ear hearing loss, found that Mr. Chudy submitted new and material evidence to reopen the claim for service connection for right ear hearing loss, and denied the claim on the merits. R. at 924-35. That month, Mr. Chudy filed a Notice of Disagreement. R. at 870. In June 2013, the RO issued a Statement of the Case that continued to deny the claims. R. at 619-60. Mr. Chudy perfected his appeal the following month. R. at 599-600.

2

According to a January 2014 VA treatment note, Mr. Chudy experienced dizziness when he stood up quickly. R. at 317. The physician explained that he was taking two blood pressure medications and had gained weight, and that with this scenario, dizziness was common. R. at 318. On examination, after the impacted right earwax was cleared, the TMs were normal. R. at 317. A July 2014 treatment record similarly noted that he got a little dizzy when bending forward and that, at times, his chest felt tight with that maneuver. R. at 329. Examination of the ears reflected normal TMs and clean external canals. *Id.*

In a September 2015 decision, the Board awarded service connection for right ear hearing loss and remanded the issue of entitlement to a compensable rating for Mr. Chudy's (now bilaterally service-connected) hearing loss. R. at 276-314.

A November 2015 VA urgent care note reflects that Mr. Chudy presented with complaints of a worsening headache for 2 weeks. R. at 2277. He reported that the pain was below his left ear and radiated to the left side of his head, and that he had just finished antibiotics for a dental infection. *Id.* On examination later that morning, the clinician assessed left sided neck and head pain, osteoarthritis, and inclusion cyst in head. R. at 2273.

A December 2015 rating decision continued the denial of a compensable rating for bilateral hearing loss. R. at 112-23. The same month, Mr. Chudy underwent a VA examination. R. at 178-81. Concerning the functional impact of hearing loss, the VA examiner responded "yes" to the question whether Mr. Chudy's hearing loss affected ordinary conditions of daily life, including ability to work. R. at 181. When asked to explain the answer "yes" in Mr. Chudy's own words, the examiner recorded his statement as the following: "'When I got the grandkids around I lose a lot of voice, and my wife too.'" *Id.*

In the December 2016 decision now on appeal, the Board denied a compensable schedular rating for bilateral hearing loss and declined to refer the case for extraschedular consideration. R. at 2-43. The Board found that "the symptoms associated with [Mr. Chudy's] hearing loss disability [were] not shown to cause any impairment that is not already contemplated by the relevant diagnostic code" and that "the rating criteria reasonably describe his disability." R. at 13. The Board also found that there had not been any hospitalizations or marked interference with employment as a result of hearing loss, and concluded that referral for extraschedular consideration was not warranted. *Id.* Mr. Chudy only appealed the Board's denial of referral for extraschedular consideration.

## II. ARGUMENTS

Mr. Chudy argues that the Board misinterpreted the law and failed to provide an adequate statement of reasons or bases to support its determination that extraschedular referral was not warranted. Appellant's Brief (Br.) at 1-9; Reply Br. at 1-5. Specifically, he contends that the Board failed to explain how the schedular rating criteria contemplated his symptoms of dizziness, ear pain, ear pressure, and social and professional difficulties, *id.* at 6, and failed to explain why his disability picture did not exhibit marked[2] interference with employment, *id.* at 8-9.

The Secretary counters that, as none of the symptoms cited by Mr. Chudy were attributed to his hearing loss disability and none of the record evidence demonstrates that his hearing loss caused marked interference with employment, the Court should affirm the Board's denial of extraschedular referral. Secretary's Br. at 7-18.

## III. ANALYSIS

VA's schedule of disability ratings is based on the average impairment of earning capacity in civil occupations from specific injuries or combinations of injuries. 38 U.S.C. § 1155; 38 C.F.R. § 3.321(a) (2017). However, "[t]o accord justice" in the "exceptional case where the schedular evaluations are found to be inadequate," VA has authorized the assignment of extraschedular ratings. 38 C.F.R. § 3.321(b)(1) (2017).[3] Disabilities that (1) "present[] such an exceptional disability picture that the available schedular evaluations . . . are inadequate" and (2) exhibit other related factors such as "'marked interference with employment' or 'frequent periods of hospitalization'" must be referred to the director of Compensation Service to determine whether

---

[2] To the extent that there is a pending issue before the Court with respect to the definition of "*marked* interference with employment" in *Smiddy v. O'Rourke*, No. U.S. Vet. App. 16-2333 (submitted to panel Jan. 19, 2018) (emphasis added), resolution of that issue is unnecessary in this context, where there is no evidence of *any* interference with employment.

[3] In *Johnson v. McDonald*, the U.S. Court of Appeals for the Federal Circuit held that § 3.321(b)(1) required VA to consider the combined effects of multiple service-connected disabilities when making an extraschedular assessment. 762 F.3d 1362, 1365-66 (Fed. Cir. 2014). In response to *Johnson*, VA recently promulgated a final rule, effective January 8, 2018, amending § 3.321(b)(1) to prohibit extraschedular consideration based on the combined effects of more than one service-connected disability. *See* Department of Veterans Affairs, Extra-Schedular Evaluations for Individual Disabilities, 82 Fed. Reg. 57,830 (Dec. 8, 2017). As the appellant does not assert any combined impact of multiple service-connected disabilities in this case, the recent amendment to § 3.321(b)(1) does not affect the Court's analysis in this matter.

an extraschedular rating is warranted. *Thun v. Peake*, 22 Vet.App. 111, 115-16 (2008), *aff'd sub nom. Thun v. Shinseki*, 572 F.3d 1366 (Fed. Cir. 2009) (quoting 38 C.F.R. § 3.321(b)(1)).

In *Yancy v. McDonald,* 27 Vet.App. 484, 494 (2016), the Court noted that the first and second *Thun* elements, although interrelated, involve separate analyses and independent inquiries, thus an error with respect to one element does not necessarily affect the Board's analysis of the other. 27 Vet.App. at 494-95. The Court held that if either *Thun* element is not met, then referral for extraschedular consideration is not appropriate. *Id.* (citing *Thun*, 22 Vet.App. at 116, and *Anderson v. Shinseki*, 22 Vet.App. 423, 427 (2009)).

The Board's denial of referral for an extraschedular disability rating is a factual determination that the Court reviews under the "clearly erroneous" standard of review. *Thun*, 22 Vet.App. at 115. As with any finding on a material issue of fact and law presented on the record, the Board must support its determination with an adequate statement of reasons or bases that enables the claimant to understand the precise basis for that determination and facilitates review in this Court. 38 U.S.C. § 7104(d)(1); *Thun*, 22 Vet.App. at 115; *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Gilbert v. Derwinski*, 1 Vet.App. 49, 57 (1990). To comply with this requirement, the Board must analyze the credibility and probative value of evidence, account for evidence it finds persuasive or unpersuasive, and provide reasons for rejecting material evidence favorable to the claimant. *Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table).

*Yancy* guides the Court's analysis here. The Court reiterates that, where an appellant has not demonstrated any error or reasons-or-bases deficiency in the Board's *Thun* element-two analysis, no further attention need be given its *Thun* element-one analysis, since both elements must be satisfied before a case may be referred for extraschedular consideration. *See Yancy*, 27 Vet.App. at 494-95. In other words, absent "marked interference with employment" or "frequent periods of hospitalization," any error as to the first *Thun* element would be harmless. *See Shinseki v. Sanders*, 556 U.S. 396, 406 (2009) (holding that the Veterans Court must "take due account of the rule of prejudicial error"). In this case, as the Board's finding regarding the second *Thun* element is outcome dispositive, the Court will confine its analysis accordingly.

Mr. Chudy argues that the Board provided an inadequate statement of reasons or bases to support its finding that the evidence did not demonstrate marked interference with employment.[4]

---

[4] Mr. Chudy has not asserted that he was hospitalized as a result of his bilateral hearing loss. *See* Appellant's

Appellant's Br. at 8. Specifically, he asserts that the record reflects that his hearing loss disability "impact[s] his occupational and professional capabilities," but that the Board failed to address this favorable material evidence.[5] *Id.* (citing R. at 181 (Dec. 2015 VA examination report)). The Secretary responds that Mr. Chudy mischaracterized the cited evidence because the December 2015 examination report did not reflect any occupational impairment but, rather, noted that when his grandchildren visited, he had difficulty hearing them. Secretary's Br. at 16-17.

The Court is not persuaded by Mr. Chudy's arguments regarding the Board's determination that there was no marked interference with employment. *Hilkert v. West*, 12 Vet.App. 145, 151 (1999) (en banc) (holding that the appellant bears the burden of demonstrating error on appeal), *aff'd*, 232 F.3d 908 (Fed. Cir. 2000); *Berger v. Brown*, 10 Vet.App. 166, 169 (1997) (stating that "the appellant . . . always bears the burden of persuasion on appeals to this Court"). Although Mr. Chudy generally contends that the Board failed to discuss favorable material evidence in its decision, he does not identify any evidence of record to support this bald assertion, aside from a reference to the December 2015 VA examination report. Appellant's Br. at 8-9 (citing R. at 181). That report records Mr. Chudy's statement that "[w]hen I got the grandkids around I lose a lot of voice, and my wife too." R. at 181. On its face, this statement has no bearing on whether Mr. Chudy's hearing loss interfered with employment.

In any event, the Board directly addressed the December 2015 report in its decision and explained that the VA examiner "noted that the functional impact of [Mr. Chudy's] hearing loss was that [he] ha[d] difficulty understanding speech in certain circumstances," but that "this alone d[id] not prohibit his ability to work in his given field." R. at 11. Although the Board may have been terse in its finding no marked interference with employment, the Board's brevity was understandable given that there was no evidence to discuss with respect to this issue, nor has Mr. Chudy identified any such evidence. *See* R. at 13; Appellant's Br. at 1-9; Reply Br. at 1-5. Read as a whole, the Board's statement of reasons or bases for finding that there was no marked interference with employment is understandable and facilitates judicial review, and the Court otherwise discerns no error in the Board's finding. *Prickett v. Nicholson*, 20 Vet.App. 370, 375 (2006) (Board decisions generally should be read as a whole); *see also* 38 U.S.C. § 7104(d)(1);

---

Br. at 1-9; Reply Br. at 1-5.

[5] Our dissenting colleague asserts that the April 2011 and December 2015 VA examinations are inadequate. However, Mr. Chudy does not make that argument in his briefs.

*Allday*, 7 Vet.App. at 527; *Thun*, 22 Vet.App. at 115 (the Board's denial of referral for extraschedular consideration is reviewed under the "clearly erroneous" standard of review). Mr. Chudy is essentially unhappy with the outcome the Board reached, but provides no persuasive reason for the Court to disturb the Board's determination—and it is not the Court's role to second-guess the factfinder. *See Owens v. Brown*, 7 Vet.App. 429, 433 (1995) (it is the province of the Board to weigh and assess the evidence of record); *Hilkert*, 12 Vet.App. at 151.

In light of the Court's holding regarding the Board's determination as to the second *Thun* element, even assuming without deciding that the Board erred or failed to adequately explain its analysis as to the first *Thun* element, any such error would be harmless. *See Shinseki*, 556 U.S. at 406; *Yancy*, 27 Vet.App. at 494. Although the Court has previously suggested that there might be certain factual scenarios where the Board's failure to discuss particular symptoms or functional effects under the first *Thun* element might affect the adequacy of its discussion as to the second element, there is no evidence or argument as to any such effect here. *See Yancy*, 27 Vet.App. at 495 n.5; *Hilkert*, 12 Vet.App. at 151.

## IV.  CONCLUSION

Upon consideration of the foregoing, that part of the December 7, 2016, Board decision that denied extraschedular referral for bilateral hearing loss is AFFIRMED, and the balance of the appeal is DISMISSED.

GREENBERG, *Judge*, dissenting: Richard Chudy appeals that part of a December 7, 2016, Board decision that denied entitlement to a compensable disability rating for bilateral hearing loss. R. at 2-41. The appellant argues that the Board misinterpreted and misapplied the law when it declined to refer the appellant's claim for extraschedular rating consideration. Appellant's Br. at 5-9. I agree.

The appellant is a Vietnam War veteran who served on active duty in the U.S. Navy from December 1968 until November 1972. R. at 485 (DD Form 214). While in combat, the appellant was exposed to rocket and artillery fire, jack hammer noise, and noise from explosions. R. at 937. During his time, the appellant earned, among other accolades, the Purple Heart, the National Defense Service Medal, and the Combat Action Ribbon. R. at 485, 937. He should not now have

to battle VA to receive benefits for the uncompensated symptoms of pressure in his ears, dizziness on movement, and vertigo. R. at 2756, 936-37, 329, 317-18.

Justice Alito noted in *Henderson v. Shinseki* that our Court's scope of review in this appeal is "similar to that of an Article III court reviewing agency action under the Administrative Procedure Act, 5 U.S.C. § 706." 562 U.S. 428, 432 n.2 (2011); *see* 38 U.S.C. § 7261. The creation of a special court solely for veterans, and other specified relations such as their widows, is consistent with congressional intent as old as the Republic. *See Hayburn's Case*, 2 U.S. (2 Dall.) 409, 410 n., 1 L. Ed. 436 (1792) ("[T]he objects of this act are exceedingly benevolent, and do real honor to the humanity and justice of Congress."). "The Court may hear cases by judges sitting alone or in panels, as determined pursuant to procedures established by the Court." 38 U.S.C. § 7254. Accordingly, the statutory command of Congress that a single judge may issue a binding decision, pursuant to procedures established by the Court, is "unambiguous, unequivocal, and unlimited." *Conroy v. Aniskoff*, 507 U.S. 511, 514 (1993); *see generally Frankel v. Derwinski*, 1 Vet.App. 23, 25-26 (1990).

From the beginning of the Republic statutory construction concerning congressional promises to veterans has been of great concern. "By the act concerning invalids, passed in June, 1794, vol. 3. p. 112, the secretary at war is ordered to place on the pension list, all persons whose names are contained in a report previously made by him to congress. If he should refuse to do so, would the wounded veteran be without remedy? Is it to be contended that where the law, in precise terms, directs the performance of an act, in which an individual is interested, the law is incapable of securing obedience to its mandate? Is it on account of the character of the person against whom the complaint is made? Is it to be contended that the heads of departments are not amenable to the laws of their country?" *Marbury v. Madison*, 5 U.S. 137, 164, 2 L. Ed. 60, 69 (1803).

In January 2003, the appellant filed for benefits based on service connection for bilateral hearing loss. R. at 1187. In June 2004, the RO granted service connection for left ear hearing loss at a noncompensable rating, effective January 21, 2003. R. at 1130-39. Later that month, the RO denied service connection for the appellant's right ear hearing loss. R. at 1114-29.

The appellant attended a VA examination in May 2005, during which he reported pressure in his ears, particularly on the left side. R. at 2756.

In December 2010, the appellant filed a claim for service connection for right ear hearing loss and for an increased rating for his left ear. R. at 1012-13. The appellant attended a VA

examination in April 2011. The appellant complained of dizziness, vertigo upon rising quickly, and difficulty hearing his grandchildren. R. at 936-37. The examiner opined that it was as likely as not that the appellant's right ear hearing loss was incurred during military service. R. at 940.

In January 2014, the appellant underwent another VA examination, during which he reported dizziness upon standing up quickly and bending forward. R. at 317-18. The appellant continued to complain of dizziness in a July 2014 examination. R. at 329.

In September 2015, the Board issued a decision in which it granted the appellant service connection for right ear hearing loss. R. at 276-314. In December 2015, the appellant attended another VA examination. R. 178-81. The appellant reported that his hearing loss affected the ordinary conditions of his daily life, including the ability to work, because the appellant had difficulty hearing his wife and grandchildren. R. at 181. That same month, the RO issued a rating decision, awarding the appellant a noncompensable rating for bilateral hearing loss, effective January 31, 2003. R. at 117-23.

In December 2016, the Board denied a compensable rating for the appellant's bilateral hearing loss. R. at 7-13. Using the results of several audiological tests, the Board found that under the rating criteria in 38 C.F.R. § 4.85, the appellant was entitled only to a noncompensable rating. R. at 9-11. Although the Board noted that the appellant's bilateral hearing loss caused him to have difficulty hearing his grandchildren and wife, the Board accorded greater weight to the audiological test results. R. at 10-11. Additionally, the Board found that "the rating criteria reasonably describe [the appellant's] disability," determining that "[t]here have not been any hospitalizations or marked interference with employment." R. at 13. Consequently, the Board found that referral for an extraschedular rating was not warranted. R. at 13.

No error is harmless. The majority rejects this conclusion and skates over the fact that the Board failed to explain how the rating criteria contemplate the appellant's symptomology. *See Thun v. Peake*, 22 Vet.App. 111, 115 (2008), *aff'd sub nom. Thun v. Shinseki*, 572 F.3d 1366 (Fed. Cir. 2009) (when either a claimant or the evidence of record suggests that a schedular rating may be inadequate, the VA must determine whether the evidence before it "presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate."); 38 U.S.C. § 7104(d)(1) ("Each decision of the Board shall include . . . a written statement of the Board's findings and conclusions, and the reasons or bases for those findings and conclusions, on all material issues of fact and law presented in the record."); *Gilbert v. Derwinski*,

1 Vet.App. 49, 56-57 (1990) (finding that Congress mandated, by statute, that the Board provide a written statement of reasons or bases for its conclusions that is adequate to enable the appellant to understand the precise basis for the Board's decision and to facilitate review in this Court).

The appellant has complained of ear pain, ear pressure, and dizziness. *See* R. at 2756, 936-37, 329, 317-18. Yet the Board did not address how these symptoms were contemplated by the appellant's rating for hearing loss. *See Doucette v. Shulkin*, 28 Vet.App. 366, 368, 371 ("[A] hearing loss claimant could provide evidence of numerous symptoms, including—for purposes of example only—ear pain, dizziness, recurrent loss of balance, or social isolation due to difficulties communicating."); *see also King v. Shulkin*, 2017 WL 6523588, at *5 (U.S. Vet. App. Dec. 21, 2017). Therefore, the Board did not perform the analysis required by *Thun*. I would have remanded the matter for the Board to provide an adequate statement of reasons or bases for its findings.

Additionally, the Board did not lay a foundation to find that the lack of occupation-related medical evidence constituted proof against the appellant's hearing loss claims, as the medical evidence relied on postdated his retirement. *See Foundation v. Shinseki*, 27 Vet.App. 258, 272 (citing *Horn v. Shinseki*, 25 Vet.App. 231, n.7 (2012) (the absence of evidence cannot be used as proof of substantive negative evidence absent "a proper foundation . . . to demonstrate that such silence has a tendency to prove or disprove a relevant fact."); *Buczynski v. Shinseki,* 24 Vet.App. 221, 224 (2011) (where there is no medical reason to comment on a symptom, silence in regard to that symptom may not be taken as proof that the doctor did not observe it). The appellant retired by February 2011 at the latest. *See* R. at 969. Both VA examinations–one in April 2011 and the other in December 2015–discussed by the Board in its decision were administered after the appellant's retirement. R. at 10. It is unsurprising that the April 2011 VA examiner opined that the appellant's hearing loss did not significantly affect his occupation, and that the appellant's December 2015 response regarding the effects of hearing loss on his daily life was limited to his social functioning. R. at 939, 181. It is illogical to suggest that a retired claimant who describes a difficulty hearing voices would not experience marked interference with employment; the evidence in the current case simply reflects that the appellant is retired. The appellant's absence from the workforce does not preclude the possibility that his uncompensated symptoms would have caused marked interference with employment. *Cf. Ortiz-Valles v. McDonald*, 28 Vet.App. 65, 70-71 (2016) ("[The relevant regulation] does not differentiate between employed and

unemployed veterans in terms of the eligibility requirements for a total disability rating based on individual unemployability.").

The duty to assist is meant to help a claimant develop necessary evidence to substantiate his claim. *See* 38 U.S.C. § 5103A. It is clear that the medical evidence on record is undeveloped because the opinions provided do not discuss with any depth the effects that the appellant's hearing loss and uncompensated symptoms have on his ability to work. *See Martinak v. Nicholson*, 21 Vet.App. 447, 455 (2007) ("[I]n addition to dictating objective test results, a VA audiologist must fully describe the functional effects caused by a hearing disability in his or her final report."). Here, the evidence at best reflects the functional effects on the appellant in his retired status. I would have remanded the matter for further development of the appellant's claim.