Citation Nr: 1641939 
Decision Date: 10/31/16 Archive Date: 11/08/16

DOCKET NO. 10-23 602 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Winston-Salem, North Carolina


THE ISSUES

1. Entitlement to a rating in excess of 30 percent for combined tension-migraine headaches for the period prior to January 16, 2013.

2. Entitlement to a compensable rating for hallux valgus and bunion of the left foot.

3. Entitlement to service connection for a bilateral knee disability.

4. Entitlement to a total disability rating based on individual unemployability (TDIU) due to service-connected disabilities for the period prior to January 16, 2013.


REPRESENTATION

Veteran represented by: Disabled American Veterans



ATTORNEY FOR THE BOARD

Jack S. Komperda, Associate Counsel


INTRODUCTION

The Veteran served on active duty from June 2002 to November 2003. 

This matter comes before the Board of Veterans' Appeals (Board) from rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in Winston-Salem, North Carolina. A February 2006 rating decision denied service connection for a bilateral knee disability and continued a previously established noncompensable rating for hallux valgus and bunion of the left foot. A February 2009 rating decision continued the previously established 10 percent rating for combined tension-migraine headaches and denied entitlement to a TDIU. 

In December 2012, the Board remanded the Veteran's increased rating claim for headaches and her TDIU claim. A March 2013 rating decision by the Appeals Management Center (AMC) increased the Veteran's rating for her headaches to 30 percent effective July 1, 2009, and to 50 percent effective January 16, 2013. A TDIU was deemed moot since the Veteran's combined rating for all service-connected disabilities became 100 percent effective January 16, 2013. However, the period prior to January 16, 2013, remains in dispute.

In a February 2014 decision, the Board granted a rating of 30 percent for headaches for the period through June 30, 2009, but denied a rating in excess of 30 percent for the period from July 1, 2009, to January 15, 2013, and also denied a rating in excess of 50 percent for the period beginning January 16, 2013. The Board also remanded the issues of entitlement to service connection for a bilateral knee disability and a left foot disability and of entitlement to a TDIU. In a February 2014 rating decision, the AMC effectuated the Board decision, assigning a 30 percent rating, effective May 19, 2008.

The Veteran appealed the denial of her increased rating claim for headaches to the United States Court of Appeals for Veterans Claims (Court). In a July 2014 Joint Motion for Partial Remand (Joint Motion), the parties asked that the portion of the Board's decision that denied entitlement to a disability rating in excess of 30 percent for the Veteran's service-connected headaches prior to January 16, 2013, be vacated and remanded to the Board for readjudication and disposition consistent with the Joint Motion. The terms of this motion did not disturb the favorable award of a 30 percent disability rating for headaches for the period prior through June 30, 2009. The Court then remanded the case to the Board for readjudication and disposition consistent with that Motion.

In December 2014, the Board denied entitlement to a disability rating greater than 30 percent for service-connected headaches for the period from July 1, 2009, to January 15, 2013. The Veteran again appealed the Board's decision to the Court. In June 2016, the Court issued a memorandum decision vacating and remanding the Veteran's increased rating claim for headaches for consideration of the entire period prior to January 15, 2013; specifically, the period prior to July 1, 2009.

The issues of entitlement to a compensable rating for a left foot disability, entitlement to service connection for a bilateral knee disability, and entitlement to a TDIU prior to January 16, 2013, are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDING OF FACT

Prior to January 16, 2013, the Veteran did not have migraine headaches with very frequent completely prostrating and prolonged attacks productive of severe economic inadaptability.

CONCLUSION OF LAW

The criteria for a rating in excess of 30 percent for headaches for the period prior to January 16, 2013, have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 4.124a, Diagnostic Code 8100 (2015).


REASONS AND BASES FOR FINDING AND CONCLUSION

I. Notice and Assistance

With respect to the Veteran's claim herein, VA has met all statutory and regulatory notice and duty to assist provisions. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326 (2015); see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015).

II. Increased Rating

Disability evaluations are determined by comparing a veteran's present symptoms with criteria set forth in the VA's Schedule for Rating Disabilities (Rating Schedule), which is based on average impairment in earning capacity. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. Separate diagnostic codes identify the various disabilities. 

When a question arises as to which of two ratings applies under a particular code, the higher rating is assigned if the disability more closely approximates the criteria for the higher rating. 38 C.F.R. § 4.7. After careful consideration of the evidence, any reasonable doubt remaining is resolved in favor of the veteran. 38 U.S.C.A. § 5107; 38 C.F.R. §§ 3.102, 4.3. The evaluation of the same disability under various diagnoses, known as pyramiding, is to be avoided. 38 C.F.R. § 4.14. 

Where service connection has already been established and an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. Francisco v. Brown, 7 Vet. App. 55, 58 (1994). Nevertheless, where the evidence contains factual findings that show a change in the severity of symptoms during the course of the rating period on appeal, the Board will assign staged ratings for separate periods of time. Hart v. Mansfield, 21 Vet. App. 505 (2007). 

The Veteran's claim for increased rating for her headache disability was received on May 19, 2008. Her service-connected combined tension-migraine headaches have been rated as 30 percent disabling under Diagnostic Code 8100 for the entirety of the appeal period prior to January 16, 2013. Under 38 C.F.R. § 4.124a, Diagnostic Code 8100, migraines with characteristic prostrating attacks occurring on an average of once a month over the last several months warrant the assignment of a 30 percent evaluation. A maximum 50 percent evaluation is warranted for migraines with very frequent completely prostrating and prolonged attacks that produce severe economic inadaptability. The rating criteria do not define "prostrating," nor has the Court. Cf. Fenderson v. West, 12 Vet. App. 119, 126-27 (1999) (in which the Court quotes Diagnostic Code 8100 verbatim but does not specifically address the matter of what is a prostrating attack.).

Turning to the evidence of record, the Veteran's VA treatment records note chronic headaches and migraines among several medical conditions on her problem list. A November 2007 VA primary care note stated the Veteran had an increased work load/stress which she thought might be a migraine trigger. A May 2008 VA treatment record noted the Veteran used tramadol/relafen for her migraines. An August 2008 VA report of an MRI head scan without contrast noted an unremarkable study. There was no evidence of an intracranial mass or an acute vascular abnormality.

An October 2008 VA examination report noted the Veteran had onset of migraine headaches in 2003. With the migraine headaches, she began to have recurrent lightheadedness and dizzy spells which became more frequent with her migraine headaches. She reported having tinnitus in her left ear only when she has a migraine headache which stops when the headache stops. She also reported having some balance and gait problems. The Veteran was able to perform her work and activities of daily living until the migraine headaches, dizziness, and lightheadedness began to occur too frequently. She lost her job as a social worker in March 2008 due to her migraines and associated symptoms. The VA examiner noted that the Veteran's migraine headaches with associated lightheadedness and dizziness cost her a job as a social work case manager. Further, the examiner thought the migraine headaches and associated symptoms would very likely interfere with any physical and sedentary work.

In a separate October 2008 VA neurological disorders examination, the Veteran reported experiencing headaches three or four times a week, and the headaches last about all day. The headaches were located in the frontal and occipital area, and when they are real severe, the headaches are located all over. The Veteran reported experiencing a sharp pain that is sometimes steady and sometimes throbbing. Sometimes her symptoms are aggravated by light, heat and the Veteran's menstrual cycle. Sometimes the Veteran's headaches are associated with nausea. The Veteran reported being laid off of work as a social worker and case manager because she was experiencing blackouts. The VA examiner noted that the Veteran's headaches represented a moderate impairment of social and occupational functioning.

An April 2009 VA treatment record noted the Veteran's reports of more frequent headaches over the last month. The Veteran reported that the recent spring weather was making her headaches worse. She reported experiencing almost daily headaches over the last month. A May 2009 VA psychiatry note states the Veteran's headaches are made worse by excessive noise, bright lights, and stress. She was referred to a TBI clinic for evaluation of her headaches and recommendations.

On May 24, 2009, the Veteran wrote in a statement in support of her claim that her migraines occur three to five times per week, but there were weeks when she suffers from them daily during different periods of the day. She stated she could still drive when there is an onset of her migraine headache, but when her symptoms progress to a full migraine she is unable to drive and is incapacitated at home taking medication for the pain. When she gets these migraines, the Veteran stated she gets nauseated, has extreme pressure in her head, experiences blurry vision, and has problems with balance. 

A July 1, 2009 VA neurology consult notes the Veteran was seen for evaluation for headaches and back pain. She reported getting headaches about five times per week. She described the headache as a pressure sensation and a throbbing feeling that can be very severe. When the Veteran gets one, she gets sensitive to light, gets dizziness and a sense of spinning. The examiner noted an impression of migraine headaches and prescribed Zomig.

In January 2013, the Veteran was afforded another VA examination for her headaches. The VA examiner noted that the frequency of prostrating headaches has increased to about once per week. The Veteran still had moderate to severe headaches which last all day, three to four times per week. The Veteran was noted to have constant head pain, pulsating or throbbing head pain, pain on both sides of the head, and pain that worsens with physical activity. Additionally, the Veteran experienced nausea, sensitivity to light and sound, and changes in vision. The VA examiner noted the Veteran experienced characteristic prostrating attacks of migraine headache pain more frequently than once per month. The VA examiner further noted that the Veteran had very frequent prostrating and prolonged attacks of migraine headache pain. In describing the functional impact of the Veteran's headache disability, the examiner noted that the Veteran had to leave work for an average of three to five hours per week because of headache pain.

A separate January 2013 mental disorders examination notes the Veteran has had to cut back to part-time work after trying to work full time because of the combination of her service-connected medical and psychological issues. She was trying to work about 25 hours per week and frequently had to take off days or go home early because of her service-connected physical or mental health issues. 

The Court noted in its June 2016 memorandum decision that its own review of the Veteran's case was frustrated by the Board's failure to discuss in the December 2014 decision whether the findings in the January 2013 VA examination made it ascertainable that an increase in disability had occurred prior to the date of the examination. Therefore, the Court found the Board's statement of reasons or bases was inadequate. 

The Board recognizes that the effective date for an increased rating can be earlier than the date an examination was conducted. Swain v. McDonald, 27 Vet. App. 219, 224 (2015). The Board also acknowledges that the January 2013 VA examination report reflected findings that the Veteran had characteristic prostrating attacks of migraine headache pain, and that the frequency, on average, of prostrating attacks over the last several months occurred more frequently than once per month. However, given the evidence of record, the Board still finds that the 30 percent rating assigned for the period prior to January 15, 2013, was appropriate. 

While the January 2013 VA examination report noted the Veteran experienced prostrating attacks more than once per month over the past several months, the evidence of record does not make it possible to determine the precise date at which point this increase in the frequency of the Veteran's prostrating attacks of migraine headache pain occurred. Further, even if such evidence was available to determine when the Veteran began experiencing prostrating attacks of migraine headache pain more frequently than once per month, this fact alone would not be sufficient to warrant the assignment of a 50 percent disability rating prior to January 16, 2013. To support the assignment of a 50 percent rating pursuant to Diagnostic Code 8100, the Veteran's prostrating headaches must be "very frequent completely prostrating and prolonged attacks," implying that the headaches caused a person to be unable to function. The attacks must also be "productive of severe economic inadaptability. The Board finds that the evidence overall does not support such a finding.

Regarding the frequency and severity of the Veteran's headaches for the period on appeal, the Veteran described frequent headaches, three to five times a week, and the Board has conceded that she experienced prostrating headaches on an average of once per month during this period on appeal. However, upon VA examination in October 2008, the Veteran stated that she was able to perform activities of daily living. On VA neurological disorders examination, she stated that she was able to drive during a headache, if necessary. Certainly, had the Veteran experienced very frequent prostrating headaches she would not have been able to accomplish these tasks. The Veteran's ability to perform activities of daily living, and operate an automobile - a highly concentrated task - attest to the fact that were not very frequent completely prostrating and prolonged during this period of time. 

The Board further finds that the Veteran's migraine headaches were not productive of severe economic inadaptability during this period of time. Here, the Board observes that with the exception of the Veteran's own statements, she has not submitted objective evidence to show that her headaches were productive of severe economic inadaptability. While the Veteran reported being laid off due to her headaches, she has provided no documentation that she resigned, was fired or was reprimanded at work due to the frequency and duration of sick leave taken for headaches. Notably, she has also not submitted any official leave report or written statements from her former employer indicating her usage of vacation or sick leave related to her headaches. She has also not submitted any objective documentary evidence showing that she lost any of her prior jobs, or was ever in jeopardy of losing one of her jobs, due to excessive use of leave related to her headaches. VA treatment records, particularly those dated from 2010 to 2012, include the Veteran's comments about working other jobs. See, e.g., VA treatment records dated March 15, 2010, February 22, 2011, and October 19, 2012. Further, as noted above, a January 2013 VA mental disorders examination stated that the Veteran was working part-time at about 25 hours per week and frequently had to take off days or go home early because of her service-connected physical or mental health issues. No reference was made to her quitting or being fired or reprimanded from these jobs because of headaches that would be compatible with a finding of very frequent completely prostrating and prolonged headaches. 

Based on the foregoing, the Board finds that this evidence does not show the headache disability was manifested by very frequent completely prostrating and prolonged attacks productive of severe economic inadaptability during the period on appeal. Therefore, the criteria for a higher rating of 50 percent for the period on appeal are not met. Presently, the evidence as a whole does not more closely approximate the criteria for a 50 percent disability rating at any specific time during the appeal period.

Other considerations

The Board has also considered lay statements from the Veteran that her disability is worse than currently evaluated. The Veteran is competent to report symptoms because this requires only personal observation. Layno v. Brown, 6 Vet. App. 465 (1994). She is not, however, competent to identify a specific level of disability of this disorder according to the appropriate diagnostic codes. Such competent evidence concerning the nature and extent of the Veteran's headaches has been provided by the medical personnel who have examined her during the current appeal and who have rendered pertinent opinions in conjunction with the evaluations. The medical findings (as provided in the examination reports and the clinical records) directly address the criteria under which this disability is evaluated. As such, the Board finds these records to be more probative than the Veteran's subjective complaints of increased symptomatology.

The Veteran's headaches result in pain. By definition of the word "headache" and from the rating schedule, this is the symptom that the rating schedule contemplates. From the plain language of the disability and the schedular language, it is the prostrating nature and the frequency of headaches that gives rise to increased ratings. The regular schedular criteria thus contemplate both the symptoms - pain - and the level of disability suffered by the Veteran - less than completely prostrating attacks. The effects of the Veteran's disability have been fully considered and are contemplated in the rating schedule; hence, referral for an extraschedular rating is unnecessary at this time. Consideration of whether the Veteran's disability picture exhibits other related factors such as those provided by the regulations as "governing norms" is not required and referral for an extraschedular rating is unnecessary. Thun v. Peake, 22 Vet. App. 111 (2008).

Finally, the Board notes that the Veteran is also service-connected for several disabilities in addition to those considered in this decision and the Board is remanding a claim for increased rating for hallux valgus of the left foot as well as claim for TDIU for further development. Thus, the Veteran and her representative have the opportunity to explicitly raise the issue of whether referral for extraschedular consideration is warranted for the Veteran's disabilities on a collective basis as part of the remanded claims for increased rating. Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014); Yancy v. McDonald, 27 Vet. App. 484 (2016).

ORDER

Entitlement to a rating in excess of 30 percent for headaches for the period prior to January 16, 2013, is denied.


REMAND

In her December 2006 substantive (VA Form 9) appeal, the Veteran indicated she wanted to testify a Board hearing at a local VA office on the issues of a compensable rating for her hallux valgus and bunion of the left foot and service connection for a bilateral knee disability. In a June 2016 memorandum, the Veteran's representative stated that given the clear request for a hearing, and the lack of any apparent withdrawal of the request, the Board must comply with the Veteran's 2006 request and arrange for a hearing. 

Pursuant to 38 C.F.R. § 20.700, a hearing on appeal will be granted to an appellant who requests a hearing and is willing to appear in person. As the Veteran has not yet been afforded the opportunity to offer testimony on the issues on appeal, and because the RO currently schedules Board video-conference and Travel Board hearings, a remand of this matter to the RO for scheduling of the requested hearing is warranted.

As to the Veteran's TDIU claim, the Board notes that the Veteran submitted her VA 21-8940 Veterans Application for Increased Compensation Based on Unemployability in May 2008. In her application, the Veteran stated she became too disabled to work in March 2008 due to her tension headaches, cervical strain and thoracolumbar strain. However, as noted above, the medical evidence of record indicates that the Veteran has been employed since that time. On remand, the Veteran should be asked to provide updated educational and employment information.

Accordingly, the case is REMANDED for the following action:

1. Contact the Veteran and request that she provide a detailed educational and employment history.

2. Schedule the Veteran for a Board hearing at the earliest available opportunity on the issues of a compensable rating for her hallux valgus and bunion of the left foot and service connection for a bilateral knee disability. Notify the Veteran and her representative of the date and time of the hearing. See 38 C.F.R. § 20.704(b). After the hearing, return the claims file to the Board in accordance with current appellate procedures.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
M. E. LARKIN
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs