http://www.va.gov/vetapp16/Files5/1641933.txt

Citation Nr: 1641933 
Decision Date: 10/31/16 Archive Date: 11/08/16

DOCKET NO. 13-32 812 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Winston-Salem, North Carolina

THE ISSUE

Entitlement to an increased initial rating for service-connected anxiety disorder, presently rated as 30 percent disabling from October 19, 2010, and as 50 percent disabling from July 10, 2014.

REPRESENTATION

Appellant represented by: North Carolina Division of Veterans Affairs

ATTORNEY FOR THE BOARD

M. Pryce, Associate Counsel

INTRODUCTION

The Veteran served on active duty from October 1966 to April 1970. He has confirmed service in the Republic of Vietnam. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an August 2011 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Winston-Salem, North Carolina. 

As a matter of background, this claim previously came before the Board in January 2014, at which time it remanded the matter for further development, to include providing the Veteran with a new VA examination. The Board is satisfied that the previously ordered development has been accomplished.

The Board also notes that at the time of the January 2014 remand, the Board characterized this claim as one for an initial rating in excess of 10 percent for service-connected anxiety disorder. After the ordered development was accomplished, the RO readjudicated the case and issued a new rating decision in October 2014 which granted an increased initial rating of 30 percent, and a subsequent increase to 50 percent effective July 10, 2014, the date of the new VA examination. Although this grant does constitute an increased grant, it does not account for the maximum schedular rating available under the Diagnostic Code for service-connected anxiety disorder. The Veteran has not indicated his ultimate satisfaction with that grant, as awarded in October 2014, and therefore the appeal remains before the Board at this time. As such, the Board has recharacterized the claim on appeal to include the updated disability ratings.

FINDINGS OF FACT

1. Prior to July 10, 2014, the Veteran's service-connected anxiety disorder resulted in occupational and social impairment with occasional decrease in work efficiency, although generally functioning satisfactorily with routine behavior, self-care, and normal conversation. 

2. From July 10, 2014, the Veteran's service-connected anxiety disorder has resulted in occupational and social impairment and reduced reliability and productivity. 

CONCLUSIONS OF LAW

1. Prior to July 10, 2014, the criteria for a rating in excess of 30 percent for service-connected anxiety disorder have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.321, 4.3, 4.7, 4.130, Diagnostic Code (DC) 9413 (2015).

2. From July 10, 2014, the criteria for a rating in excess of 50 percent for service-connected anxiety disorder have not been met. 38 U.S.C.A. §§ 1155, 5107; 38 C.F.R. §§ 3.102, 3.159, 3.321, 4.3, 4.7, 4.130, DC 9413.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Notice and Assistance

VA has a duty to notify and assist claimants in substantiating claims for VA benefits. See e.g. 38 U.S.C.A. §§ 5103, 5103A (West 2014) and 38 C.F.R. § 3.159 (2015). When a claim has been granted and there is disagreement as to "downstream" questions, such as effective dates, the claim has been substantiated and there is no need to provide additional VCAA notice and the Court will not presume that a notice error is prejudicial. See Hartman v. Nicholson, 483 F.3d 1311, 1314-15 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112, 116-17 (2007). The Veteran bears the burden of demonstrating any prejudice from defective (or nonexistent) notice with respect to the downstream elements. Goodwin v. Peake, 22 Vet. App. 128, 137 (2008). That burden has not been met in this case as the Veteran has not alleged such prejudice. In any case, the duty to notify was satisfied by way of a letter sent in November 2010 in connection with his initial claim of service connection for a psychiatric disability. 

VA also has a duty to assist a claimant in the development of a claim. This duty includes assisting the claimant in the procurement relevant treatment records and providing an examination when necessary. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. The Board finds that all necessary development has been accomplished and all available evidence pertaining to the matter decided herein has been obtained. The RO has obtained the Veteran's VA treatment records, private treatment records, VA examination reports, and statements from the Veteran and his representative. Neither the Veteran nor his representative has notified VA of any outstanding evidence, and the Board is aware of none. Hence, the Board is satisfied that the duty-to-assist was met. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159(c). 

II. Increased Rating

Disability ratings are determined by the application of a schedule of ratings, which is based on the average impairment of earning capacity. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. § 4.1 (2015). The Veteran's entire history is reviewed when making disability evaluations. See generally, Schafrath v. Derwinski, 1 Vet. App. 589 (1991); 38 C.F.R. § 4.1. Where, as in the case of the Veteran's anxiety disorder, the question for consideration is the propriety of the initial evaluation assigned, consideration of the medical evidence since the effective date of the award of service connection and consideration of the appropriateness of staged ratings are required. See Fenderson v. West, 12 Vet. App. 119, 126 (1999). Further, "[w]here there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned." 38 C.F.R. § 4.7 (2015).

The Veteran's anxiety disorder is rated under 38 C.F.R. § 4.130, Diagnostic Code (DC) 9413 (2015), which provides the rating criteria for mental health disorders. The Veteran's anxiety disorder is presently rated as 30 percent disabling from October 19, 2010, and at 50 percent disabling from July 10, 2014. It is the Veteran's contention that he should be awarded higher ratings. 

A 30 percent rating is assigned when there is occupational and social impairment with occasional decreased in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, and mild memory loss (such as forgetting names, directions, or recent events). 38 C.F.R. § 4.130, DC 9413.

A 50 percent rating is assigned when there is occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short-term and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships. Id.

A 70 percent evaluation is warranted for occupational and social impairment, with deficiencies in most areas, such as work, school, family relationships, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); inability to establish and maintain effective relationships. Id.

Lastly, a 100 percent evaluation is warranted for total occupational and social impairment, due to such symptoms as gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent ability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. Id.

Consideration is given to the frequency, severity, and duration of psychiatric symptoms, the length of remission, and the Veteran's capacity for adjustment during periods of remission. The rating agency shall assign an evaluation based on all the evidence of record that bears on occupational and social impairment, rather than solely on the examiner's assessment of the level of disability at the moment of examination. See 38 C.F.R. § 4.126(a) (2015). Further, when evaluating the level of disability arising from a mental disorder, the rating agency will consider the extent of social impairment, but shall not assign an evaluation solely on the basis of social impairment. 38 C.F.R. § 4.126(b). It is necessary to evaluate a disability from the point of view of the Veteran working or seeking work. 38 C.F.R. § 4.2 (2015). 

In assessing the evidence of record, it is important to note that the Global Assessment of Functioning (GAF) scale is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed.1994) (DSM-IV). A GAF score of 41-50 is defined as: "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job, cannot work)." A GAF score of 51-60 is defined as : "[m]oderate symptoms (e.g., flat affect and circumlocutory speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." A GAF score of 61-70 is denied as : "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." Id. 

Effective August 4, 2014, VA amended the regulations regarding the evaluation of mental disorders by removing outdated references to DSM-IV. The amendments replace those references with references to the recently updated "DSM-5." However, as the Veteran's increased rating claim was originally certified to the Board in December 2013, the DSM-IV is applicable to this case. That said, according to the DSM-5, clinicians do not typically assess GAF scores. The DSM-5 introduction states that it was recommended that the GAF be dropped from DSM-5 for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice. As the period of time in question in this appeal pre-dates and post-dates the adoption of the DSM-5, the Board must continue to consider the criteria contained in the DSM-IV, but is cognizant of the fact that GAF scores may not be available for all periods on appeal. Therefore, in reviewing the evidence of record, the Board will consider any GAF scores of record. In doing so, the Board is cognizant that GAF scores are not, in and of themselves, the dispositive element in rating a disability. Rather, GAF scores must be considered in light of the actual symptoms of the Veteran's disorder, which provide the primary basis for the rating assigned. See 38 C.F.R. § 4.126(a).

In the present matter, the Veteran's VA treatment records show that on April 28, 2009, the Veteran presented with psychiatric symptoms present since returning from service in Vietnam. He was reported as being married for 39 years. Symptoms included insomnia, mild depressive episodes, anger, anxiety attacks, alienation, hypervigilance, guardedness in groups, avoidance behavior, and other dysfunctional behaviors in the area of work with change of jobs on several occasions, as well as in relationships. He denied suicidal or homicidal ideation. He did not indicate issues with his marriage. He was presently self-employed as a truck driver. He presented as cooperative but aloof and mildly guarded. He was appropriately dressed with good hygiene. He reported a poor social life and that he was a loner with chronic feelings of alienation and isolation. Mood was eurythmic. He was in good control of self and reality. Thought process was linear and goal oriented. Memory, recall, attention, insight, judgment and cognitive functions were all intact. At that time, the Veteran was diagnosed with posttraumatic stress disorder (PTSD) although he was not given a full diagnosis of that disability under the DSM-IV criteria. GAF score was 45, indicating "serious" symptoms, which the examiner stated was due to the chronicity of his psychiatric disability.

In August 2011, in connection with his service-connection claim, the Veteran was afforded a VA examination. At that time, the examiner stated that the Veteran's symptoms did not meet the diagnostic criteria for PTSD, but was given a confirmed diagnosis of anxiety disorder, not otherwise specified. At that time, the examiner stated that the Veteran's mental disability had been formally diagnosed, but symptoms were not severe enough to either interfere with occupational and social functioning or to require continuous medication. The Veteran reported a positive relationship with his wife, adult son, step-son, and teenage granddaughter. He denied problems making or keeping friends. He reported enjoying cooking-out, sleeping and gardening. He was oriented to person, place and time. He denied suicidal or homicidal ideation or intent. Mood was content, calm, and stable. Affect was appropriate. He exhibited some anxiety when discussing traumatic experienced. No significant problems with thinking or communication were observed. Symptoms included anxiety and chronic sleep impairment. GAF score was 65, indicating some mild symptoms. 

In his VA From 9 (Appeal to the Board of Veterans' Appeals), the Veteran stated that he failed to provide the August 2011 examiner with an open and honest insight into the symptoms of his psychiatric disability. Specifically, he stated that he has great difficulty being open about his condition because he feels that others may use the information to his disadvantage. 

In light of that statement, the Board issued a remand in January 2014, requesting that the Veteran be afforded a new VA examination. On July 10, 2014, the Veteran presented for a new examination. The examiner again diagnosed an anxiety disorder, not otherwise specified. The examiner stated that the Veteran had occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily, with normal routine behavior, self-care, and conversation. He reported being married with two children, but did not socialize with others and preferred to keep to himself. Symptoms included anxiety; panic attacks more than once a week; mild memory loss, such as forgetting names, directions or recent events; impairment of short and long-term memory; disturbances of motivation and mood; difficulty in establishing effective work and social relationships; and difficulty in adapting to stressful circumstances, including a work or a work like setting. He was alert and cooperative. Mood was anxious and affect constricted. He maintained adequate eye contact. He was casually dressed and appropriately groomed. Suicidal or homicidal ideation was not reported. He was found to be capable of managing his financial affairs. A GAF score was not provided.

In light of the above, the Board finds that the Veteran's service-connected anxiety disorder has been correctly rated as 30 percent disabling from October 19, 2010, and as 50 percent disabling from July 10, 2014. 

Particularly, prior to July 2014, the Veteran's symptoms included insomnia, mild depressive episodes, anger, anxiety attacks, guardedness in groups, avoidance behavior, and other dysfunctional behaviors in the area of work with change of jobs on several occasions and issued with social relationships. He did not indicate issues with his marriage. He was self-employed. He was in good control of self and reality. Thought process was linear and goal oriented. Memory, recall, attention, insight, judgment and cognitive functions were all intact. In fact, the Veteran's August 2011 examination report found even milder symptoms, although the Board is willing to consider the Veteran's 2009 evaluation due to the Veteran's statement that he did not fully disclose his condition in the 2011 examination. There is no evidence in the record of any more serious symptoms such as flattened affect; circumstantial, circumlocutory, or stereotyped speech; anxiety attacks more than once a week; difficulty in understanding complex commands; or impairment of short or long term memory. There were no indication of issues with judgment or abstract thinking. Although in 2009, his GAF score indicated "serious" symptoms, the Board also notes that that score was predicated upon chronicity of the condition, and that the symptoms actually recorded in that examination report do not indicate a higher rating is appropriate. As such, the Board finds that prior to July 10, 2014, the evidence reveals signs and symptoms that more nearly approximate a 30 percent evaluation for his anxiety disorder. 38 C.F.R. § 4.130, DC 9413.

From July 10, 2014, the Board finds that the Veteran's psychiatric disability should be rated as 50 percent disabling. From that date forward, the evidence documents worsening symptoms such as memory issues, disturbances of motivation and mood, panic attacks more than once a week, and difficulty adapting to stressful circumstances. The Board finds that these symptoms are more appropriately compensated by a 50 percent rating. Id.

The Board has considered whether the Veteran's disability may warrant a higher rating, but finds that it does not. He has not shown any evidence of suicidal ideation, in fact, he has explicitly denied it. He does not engage in obsessional rituals. His speech is logical and relevant. Although he does have panic attacks, they are not near constant. He does not have impaired impulse control. Further, when making a determination with regard to a 70 percent rating, the Board must first consider the Veteran's symptomatology. However, the regulations also require an ultimate factual conclusion as to the veteran's level of impairment in "most areas." Vazquez-Claudio v. Shinseki, 713 F.3d 112, 117 (Fed. Cir. 2013). These areas include work, school, family relationships, judgment, thinking, and mood. 38 C.F.R. § 4.130, DC 9411. Although the Veteran has been shown to have issues with mood and work, the evidence shows that he maintains a good relationship with his family, exhibits generally good judgment, and his thinking appears to be generally intact, with occasional memory lapses, nor is there any indication that he would be unable to adapt to a school-like setting. The Veteran maintained adequate eye contact along with being alert and cooperative during the 2014 examination. The Board finds that these exhibited symptoms show an appropriate mood. In light of consideration of the relevant lay and medical evidence, the Board finds that the Veteran's psychiatric disorder is more nearly approximated by the current 
50 percent rating, as staged. 

The Board has also considered whether the Veteran's anxiety disorder has resulted in total social and occupational impairment for any period of time such that a 
100 percent schedular evaluation is warranted, but finds that it has not. Particularly, there is no indication of gross impairment of thought processes or communication, and no evidence of hallucinations. He experiences generally good hygiene. While he retired from employment, he has not indicated that it was prompted by his psychiatric disability. Finally, since the date of service connection, there is no indication that the Veteran suffered memory loss for names of close relatives, his own occupation, or his own name. No other exhibited symptoms shown demonstrate total social and occupational impairment. Accordingly, there is presently no evidence in the record upon which upon which to assign a 100 percent rating ("[t]otal occupational and social impairment"). 

Finally, in exceptional cases an extraschedular rating may be provided. 38 C.F.R. § 3.321. The Court has set out a three-part test, based on the language of 38 C.F.R. § 3.321(b)(1), for determining whether a Veteran is entitled to an extraschedular rating: (1) the established schedular criteria must be inadequate to describe the severity and symptoms of the claimant's disability; (2) the case must present other indicia of an exceptional or unusual disability picture, such as marked interference with employment or frequent periods of hospitalization; and (3) the award of an extraschedular disability rating must be in the interest of justice. Thun v. Peake, 
22 Vet. App. 111 (2008), aff'd, Thun v. Shinseki, 572 F.3d 1366 (Fed. Cir. 2009). 

Here, the Board finds that the rating criteria contemplate the Veteran's psychiatric disability the Veteran's service-connected psychiatric disability is productive of symptoms specifically identified in the Rating Schedule, such as anxiety, sleeplessness, his disturbances in mood, and social difficulty (as staged). Thus, thus the manifestations of his anxiety disorder are contemplated by the schedular rating criteria. The rating criteria are therefore adequate to evaluate the Veteran's psychiatric disability and referral for consideration of extraschedular rating is not warranted.

Also considered by the Board is whether the collective effect of his other service connected disability warrants referral for extraschedular consideration. See Johnson v. Shinseki, 762 F.3d 1362 (Fed. Cir. 2014); Yancy v. McDonald, 27 Vet. App. 484, 495 (2016) (holding that the Board is required to address whether referral for extraschedular consideration is warranted for a veteran's disabilities on a collective basis only when that issue is argued by the claimant or reasonably raised by the record through evidence of the collective impact of the claimant's service-connected disabilities). The Veteran is presently service connected for bilateral hearing loss, bilateral tinnitus, and coronary artery disease. There is no indication in the record that his anxiety disorder has a collective effect on any of those disabilities. As such, referral is not appropriate in this matter. 

In sum, the Board finds that prior to July 10, 2014, the Veteran's anxiety disorder has resulted in occupational and social impairment with occasional decrease in work efficiency with intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, panic attacks (weekly or less often), sleep impairment, anger, guardedness in groups, and avoidance behavior. As such, the 30 percent rating awarded for that time is continued. From July 10, 2014, the Veteran's anxiety disorder resulted in reduced reliability due to symptoms such as circumstantial speech, panic attacks more than once a week, mild short-term memory issues, disturbances of motivation or mood, and difficulty in establishing and maintaining effective work and social contacts. As such, a the assigned 50 percent rating is continued under 38 C.F.R. § 4.130, 
DC 9413. 

In reaching this conclusion, the Board has considered all evidence of record; however, because the preponderance of the evidence is against the claim for a higher rating, the "benefit-of-the-doubt" rule has been applied where appropriate. 38 U.S.C.A. § 5107(b) (West 2014).

(CONTINUED ON THE NEXT PAGE)

ORDER

Entitlement to a rating in excess of 30 percent prior to July 10, 2014, for service-connected anxiety disorder is denied. 

Entitlement to a rating in excess of 50 percent from July 10, 2014, for service-connected anxiety disorder is denied. 

____________________________________________
PAUL SORISIO
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs