Citation Nr: 1702648 
Decision Date: 01/31/17 Archive Date: 02/09/17

DOCKET NO. 08-10 094A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUES

1. Entitlement to an effective date earlier than March 10, 2003, for service connection for ventral hernia. 

2. Entitlement to an initial rating in excess of 20 percent for ventral hernia for the period prior to June 21, 2012. 


REPRESENTATION

Appellant represented by: The American Legion


ATTORNEY FOR THE BOARD

C. Biggins, Associate Counsel

INTRODUCTION

The Veteran served on active duty from August 1973 to March 1996. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a January 2007 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Oakland, California. 

This case was most recently before the Board in August 2014, at which time it was remanded to the Agency of Original Jurisdiction (AOJ) so that additional development could be undertaken. See Stegall v. West, 11 Vet. App. 268 (1998). 


FINDINGS OF FACT

1. The Veteran's claim for entitlement to service connection for ventral hernia was received on March 10, 2003; an earlier informal claim for service connection was not received. 

2. Service connection for a ventral hernia was granted by a January 2007 rating decision effective April 21, 2006. 

3. A May 2014 rating decision granted an earlier effective date of March 10, 2003, the date of the Veteran's claim for service connection of a ventral hernia. 

4. Throughout the appeal period (prior to June 21, 2012) the Veteran's ventral hernia was large and not well supported by belt under ordinary conditions.


CONCLUSIONS OF LAW

1. The criteria for an effective date prior to March 10, 2003, for the award of service connection for a ventral hernia have not been met. 38 U.S.C.A. §§ 1155, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.400 (2016).

2. The criteria for an initial rating for service-connected ventral hernia of 40 percent for the period prior to June 21, 2012 are met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. § 4.114, Diagnostic Code (Code) 7339 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duties to Notify and Assist 

With respect to the Veteran's claim herein, VA has met all statutory and regulatory notice and duty to assist provisions. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326 (2016); see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015).

II. Earlier Effective Date 

a. Legal Criteria 

Except as otherwise provided, the effective date of an evaluation and award of compensation based on an original claim or a claim reopened after final disallowance, will be the date of receipt of the claim or the date entitlement arose, whichever is the later. 38 C.F.R. § 3.400. The effective date of an award of service connection shall be the day following the date of discharge or release if application is received within one year from such date of discharge or release. Otherwise, the effective date is the date of receipt of claim, or the date entitlement arose, whichever is later. 38 U.S.C.A. § 5110; 38 C.F.R. § 3.400 (b)(2)(i). 

A "claim" is defined as 'a formal or informal written communication requesting a determination of entitlement or evidencing belief in entitlement, to a benefit." 38 C.F.R. § 3.1 (p). An informal claim is "[a]ny communication or action, indicating an intention to apply for one or more benefits.... Such informal claim must identify the benefit sought." 38 C.F.R. § 3.155 (a). While VA has since amended this regulation, during the time in question the version of the regulation cited above was in effect. 79 Fed. Reg. 57,660, 57,695 (Sep. 25, 2014). 

Thus, the essential elements for any claim, whether formal or informal, are "(1) an intent to apply for benefits, (2) an identification of the benefits sought, and (3) a communication in writing." Brokowski v. Shinseki, 23 Vet. App. 79 (2009). VA is not required to anticipate a claim for a particular benefit where no intention to raise it was expressed. Brannon v. West, 12 Vet. App. 32 (1998). 

To determine when a claim was received, the Board must review all communications in the claims file that may be construed as an application or claim. See Quarles v. Derwinski, 3 Vet. App. 129 (1992).

b. Analysis 

Service connection for a ventral hernia was awarded by the January 2007 rating decision on appeal. An initial 20 percent evaluation was assigned effective April 21, 2006. Following the Veteran's May 2007 notice of disagreement with the assigned effective date and evaluation a May 2014 rating decision granted an earlier effective date of March 10, 2003. 

In order to determine the appropriate effective date for the award of service connection for a ventral hernia, the Board must determine when the Veteran's claim for service connection was received and when entitlement to the benefit arose. On March 10, 2003 the Veteran filed a formal claim for service connection for "atrophy of left side abdomen muscles as secondary to service connected surgeries." The Board notes an August 2003 examiner found that the symptoms the Veteran described were manifestations of a ventral hernia. 

The Board has considered whether the record contains any communication from the Veteran dated prior to March 10, 2003 that could be considered an informal claim for benefits. Specifically, the Board notes the Veteran's March 10, 2003, claim indicated that he intended to "re-open" his claim to add to his service-connected surgery claims, implying that he thought his claim for manifestations of a ventral hernia was a claim to re-open. However, the record contains no statements or correspondence from the Veteran dated prior to March 2003 indicating that he was seeking entitlement to VA benefits for a ventral hernia. The claims filed by the Veteran prior to March 2003 included myocardial infarction with hypertension, splenectomy, multiple surgical keloid scars on abdomen, lumbosacral strain, nissen fundoplication for hiatal hernia (claimed as reflux esophagitis), right knee strain, and left pneumothorax. These claims do not contain a claim for service connection of a ventral hernia or the atrophy of the abdominal muscles the Veteran noted in his March 2003 claim. 

The Board notes that the Veteran did file a previous claim for a hiatal hernia; he noted this hernia caused reflux esophagitis. However, the Board finds that as the Veteran's March 2010 claim was for manifestations of a ventral hernia to include atrophy of the abdominal muscles, his previous hiatal hernia claim did not include a claim for service connection of a ventral hernia. 

An earlier effective date is also not warranted based on the date entitlement to the benefit arose. The Board acknowledges the Veteran's contention that the record contains evidence establishing the presence of a ventral hernia prior to receipt of the his claim, however, 38 C.F.R. § 3.400 (b) is clear that the effective date for an award of service connection is the later of the date entitlement arose or the date the claim was received. Nelson v. Principi, 18 Vet. App. 407 (2004); see also Lalonde v. West, 12 Vet. App. 377 (1999). Moreover, as the Veteran did not file his claim within one year of his separation from active duty in March 1996 an effective date of April 1, 1996, the date following his separation from active service, is not warranted. 38 C.F.R. § 3.400 (b)(2)(i). 

Thus, an effective date earlier than March 10, 2003, for the grant of service connection for a ventral hernia is not possible. The pertinent legal authority governing effective dates in this case is clear and specific, and the Board is bound by such authority. Pursuant to that authority, the Board finds that there is no legal basis by which an effective date for the grant of service connection for ventral hernia can be assigned; hence, the claim for an earlier effective date must be denied. 

III. Ventral Hernia

a. Legal Criteria 

Disability ratings are based on average impairment in earning capacity resulting from a particular disability, and are determined by comparing symptoms shown with criteria in VA's Schedule for Rating Disabilities (Rating Schedule). 
38 U.S.C.A. § 1155; 38 C.F.R. Part 4. When a question arises as to which of two evaluations shall be assigned, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. 

Separate diagnostic codes identify the various disabilities. The basis of disability evaluation is the ability of the body as a whole, or of the psyche, or of a system or organ of the body to function under the ordinary conditions of daily life including employment. 38 C.F.R. § 4.10.

Where an appeal is from the initial rating assigned with the award of service connection for a disability, the entire history of the disability must be considered and, if appropriate, separate ratings ("staged ratings") may be assigned for separate periods of time, based on the facts found. Fenderson v. West, 12 Vet. App. 119 (1999).

The Veteran's service-connected ventral hernia is currently rated 20 percent for the period on appeal under 38 C.F.R. § 4.114, Code 7339. 

Under 38 C.F.R. § 4.114, Code 7339 a 20 percent rating is provided for a post-operative ventral hernia which is small, not well supported by belt under ordinary conditions, or a healed ventral hernia or postoperative wounds with weakening of abdominal wall and indication for a supporting belt. A 40 percent rating is warranted for a large ventral hernia which is not well supported by belt under ordinary conditions. A 100 percent rating is warranted for a massive ventral hernia which is persistent with severe diastasis of recti muscles or extensive diffuse destruction or weakening of muscular and fascial support of abdominal wall so as to be inoperable. 

b. Analysis 

The Veteran contends that he is entitled to an initial rating in excess of 20 percent because his ventral hernia has always been large. 

The Veteran's VA treatment records contain several notations of treatment for his ventral hernia. A January 2001 VA treatment record noted the Veteran's ventral hernia was 15 x 8 cm and was reducible. 

Additionally, the Veteran was provided with two VA examinations during the period on appeal. The Veteran was provided with an August 2003 VA examination. The Veteran reported he could not lift over 50 pounds or wear a shirt inside his pants because the pressure was too much on his hernia. The examiner noted the Veteran's ventral hernia was 6 by 4.5 inches and repairable. The Veteran was provided with an additional VA examination in August 2006 in which the examiner noted a ventral hernia was present. A January 2007 VA treatment record noted the Veteran's ventral hernia was approximately one centimeter in diameter.

In response to the August 2014 Board remand the Veteran was provided with a March 2016 VA examination. The examiner's findings regarding the appeal period noted the Veteran had a weakened abdominal wall in 2005. 
 
The Veteran also submitted a May 2005 private treatment record noting that he had a small bowel obstruction and a four centimeter ventral hernia that was incarcerated and chronic. 

The Veteran provided an April 2008 statement indicating that his ventral hernia should be rated higher than 20 percent because it caused his bowel obstruction in May 2005. The Veteran provided a May 2014 statement indicating his ventral hernia caused him to be unable to lift things. Additionally, the Veteran submitted a March 2014 lay statement from his wife. The Veteran's wife indicated she has known the Veteran since 2009 and that he had to purchase larger clothes to conceal his ventral hernia because "sometimes it just appears larger." 

Lay persons are competent to attest to factual matters of which he has first-hand knowledge (e.g., experiencing a ventral hernia). Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). Thus, the Board finds the Veteran is competent to testify as to his ventral hernia symptomatology. Moreover, the Veteran's wife is competent to testify of things of which she has first-hand knowledge (e.g. the Veteran needing to buy larger clothes to cover his ventral hernia). Therefore the Board finds her testimony regarding the Veteran's ventral hernia size competent evidence. 

As noted above a 40 percent evaluation for ventral hernia will be awarded when the hernia is large and not well supported by belt under ordinary conditions. The Board acknowledges the Veteran's contention and agrees that the VA examinations provided to him prior to June 2012 do not contain consistent results regarding the measurements of his hernia and do not make a finding regarding whether it is small, medium, or large. However, in June 2012 the Veteran's hernia was noted to be 9 by 10 centimeters which the examiner determined was large. The August 2003 examiner found the Veteran's hernia measured 4.5 inches. Converting this measurement into centimeters indicates that the Veteran's hernia was approximately 15.2 by 11.4 centimeters. As the June 2012 examiner found a hernia measuring 9 by 10 centimeters to be large, the Board concludes that the August 2003 measurements noting the Veteran's hernia to be approximately 15.2 by 11.4 centimeters is also large. 

The Board also finds that the evidence is at least in relative equipoise as to whether the large hernia is not well supported by a belt under ordinary conditions. The June 2012 examiner noted that the hernia was well supported; however, the August 2003 examiner noted that the Veteran could only use it while standing. The fact that the Veteran cannot use a belt when sitting, and the statements from the Veteran and his wife as to his inability to lift and having to buy larger clothes because of the size of the hernia, support a finding that the hernia is not well supported by belt under ordinary conditions. Thus, assignment of a 40 percent rating is warranted.

The Board finds that for the period prior to June 21, 2012, the findings Veteran's ventral hernia do not more closely approximate the criteria for a higher 100 percent rating. A 100 percent evaluation is warranted for a massive ventral hernia which is persistent with severe diastasis of recti muscles or extensive diffuse destruction or weakening of muscular and fascial support of abdominal wall so as to be inoperable. A January 2001 VA treatment provider and August 2003 and June 2012 VA examiner's found that the Veteran's ventral hernia to be reducible and operable. Thus, the Board finds the Veteran's ventral hernia more closely approximates a 40 percent rating rather than the 100 percent rating. 

Additionally, the Board has considered whether the Veteran would be entitled a higher rating under Code 7388. Code 7388 provides a 60 percent rating for inguinal hernia that was large, postoperative, recurrent, not well supported under ordinary conditions and not readily reducible, when considered inoperable. As the Veteran's ventral hernia was repeatedly noted to be reducible and operable during the appeal period the Board finds the Veteran's ventral hernia does not more closely approximate a 60 percent rating under Code 7388. 

Accordingly, and with resolution of all reasonable doubt in the Veteran's favor, the Board finds that the Veteran's ventral hernia more closely approximated the criteria for a 40 percent rating under Code 7339. As such, the criteria for an initial 40 percent schedular rating are met for the entire appeal period March 10, 2003 through June 20, 2012.

IV. Other Considerations

The Board has also considered whether the rating issue should be referred for consideration of an extraschedular rating under 38 C.F.R. § 3.321(b)(1). The evidence in this case does not show such an exceptional disability picture that the available schedular evaluations for the service-connected ventral hernia are inadequate. A comparison between the level of severity and symptomatology with the established criteria shows that the rating criteria reasonably describe each respective manifestation of the disability at issue. To the extent that the Veteran has complained of stomach cramping, alternating diarrhea and constipation, and bloating these symptoms have already been considered by his evaluation for his hiatal hernia. The pertinent manifestations and symptomatology are contemplated by the applicable codes and the rating assigned adequately compensates him for his disability level. His reported symptoms, even his difficulty lifting things, do not reach a level beyond the normal disability picture for someone with a ventral hernia. Thus, consideration of whether the Veteran's disability picture exhibits other related factors such as those provided by the regulations as "governing norms" is not required and referral for an extraschedular rating is unnecessary. Thun v. Peake, 22 Vet. App. 111 (2008).

Finally, the Board notes that the Veteran is service-connected for numerous disabilities. However, the issue of whether referral for extraschedular consideration is warranted for the Veteran's disabilities on a collective basis has not been argued or reasonably raised by the record. Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014); Yancy v. McDonald, 27 Vet. App. 484 (2016). 

The Veteran was awarded a total disability evaluation based upon individual unemployability (TDIU), effective from July 16, 2008 to June 22, 2012, the date of the 100 percent rating for his ventral hernia. The Board has considered whether this appeal raises a claim of entitlement to a due to his service-connected ventral hernia prior to July 2008. See Rice v. Shinseki, 22 Vet. App. 447 (2009). The Veteran reported retiring from his job in 2008 due to his posttraumatic stress disorder. There is no suggestion, either from the Veteran or from the evidence itself, that his service-connected ventral hernia specifically has a profound effect on his ability to work in and of itself prior to that date. Therefore, the Board finds that this appeal does not encompass a TDIU claim. 


ORDER

Entitlement to an effective date earlier than March 10, 2003, for service connection of a ventral hernia is denied. 

Entitlement to an initial rating of 40 percent for ventral hernia for the period prior to June 21, 2012 is granted; subject to the legal authority governing the payment of VA compensation. 



____________________________________________
M.E. LARKIN
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs