Citation Nr: 1826247 
Decision Date: 04/27/18 Archive Date: 05/07/18

DOCKET NO. 08-21 900 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in San Juan, the Commonwealth of Puerto Rico


THE ISSUE

Entitlement to an initial evaluation in excess of 70 percent for posttraumatic stress disorder (PTSD).


ATTORNEY FOR THE BOARD

A. Labi, Associate Counsel



INTRODUCTION

The Veteran served on active duty from January 1966 to December 1967.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a May 2006 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in San Juan, Puerto Rico.

In June 2010, the Board remanded the case to the Agency of Original Jurisdiction (AOJ) for additional development.

In October 2011, the Board denied the Veteran's claim for an initial evaluation for PTSD in excess of 30 percent prior to August 27, 2002, and in excess of 50 percent thereafter.

The Veteran appealed the Board's October 2011 decision to the United Court of Appeals for Veterans Claims (Court). In October 2012, the parties filed a Joint Motion for Remand (Joint Motion), requesting that the Court vacate the Board's October 2011 decision and remand the case for readjudication. The Court issued an order in October 2012, granting the Joint Motion and returned the case to the Board.

In April 2014, the Board granted an initial 70 percent evaluation, but no higher, effective September 9, 1998.

The Veteran appealed the Board's April 2014 decision to the Court. In February 2015, the parties filed a Joint Motion requesting that the Court vacate the portion of the Board's April 2014 decision that denied an initial evaluation in excess of 70 percent for PTSD and remand the issue for readjudication in compliance with the remand directives specified. The Court issued an order in February 2015, granting the Joint Motion, and the case was returned to the Board.

In March 2016, the Board remanded the claim to the AOJ for further development. The Board finds that there has been substantial compliance with its remand. Stegall v. West, 11 Vet. App. 268 (1998).

The record shows that the Veteran was previously represented by Joseph R. Moore of Bergmann & Moore, LLC. In June 2017, counsel submitted a letter to withdraw as the Veteran's representative, stating that the power of attorney agreement has been satisfied in this case and that any further legal services rendered would be outside the scope of the representation agreement. The Board views this as a motion to withdraw of services by the representative submitted after the case was certified to the Board. See 38 C.F.R. § 20.608(b)(2) (2017). Finding good cause, the Board grants the motion. The June 2017 letter indicates that the Veteran was informed of the withdrawal and was unopposed to it. In the February 2018 SSOC and related notice letter, the RO advised the Veteran that there is no record of the Veteran appointing a service organization or representative and to contact the RO for assistance in locating a recognized or approved representative. The Board finds the June 2017 letter and February 2018 SSOC notification sufficient to find that the Veteran is aware that he is unrepresented and the Board may proceed to adjudicate the appeal.


FINDING OF FACT

The Veteran's service-connected psychiatric disability, claimed as PTSD, has not resulted in total occupational and social impairment.


CONCLUSION OF LAW

The criteria for a disability rating in excess of 70 percent for PTSD have not been met for any period on appeal. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.102, 3.321, 4.1, 4.2, 4.3, 4.7, 4.10, 4.21, 4.125, 4.126, 4.130, Diagnostic Code 9411 (2017).



REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran contends that his psychiatric disorder, claimed as PTSD, meets the criteria for a rating higher than 70 percent disabling.

Disability ratings are determined by applying the criteria set forth in the VA's Schedule for Rating Disabilities, which is based on the average impairment of earning capacity. Individual disabilities are assigned separate diagnostic codes. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. The basis of disability evaluations is the ability of the body as a whole, or of the psyche, or of a system or organ of the body to function under the ordinary conditions of daily life including employment. 38 C.F.R. § 4.10.

In determining the severity of a disability, the Board is required to consider the potential application of various other provisions of the regulations governing VA benefits, whether or not they were raised by the Veteran, as well as the entire history of the Veteran's disability. 38 C.F.R. §§ 4.1, 4.2; Schafrath v. Derwinski, 1 Vet. App. 589, 595 (1991).

If the disability more closely approximates the criteria for the higher of two ratings, the higher rating will be assigned; otherwise, the lower rating is assigned. 38 C.F.R. § 4.7. It is not expected that all cases will show all the findings specified; however, findings sufficiently characteristic to identify the disease and the disability therefrom and coordination of rating with impairment of function will be expected in all instances. 38 C.F.R. § 4.21.

In deciding this appeal, the Board has considered whether separate ratings for different periods of time are warranted, a practice of assigning ratings referred to as "staging the ratings." See Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2008).

The criteria for rating PTSD are found at 38 C.F.R. § 4.130, DC 9411. A 70 percent evaluation is warranted where there is occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work like setting); and inability to establish and maintain effective relationships. 38 C.F.R. § 4.130.

A 100 percent evaluation requires total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; and memory loss for names of close relatives, own occupation, or own name. Id.

Ratings are assigned according to the manifestation of particular symptoms. However, the use of the term "such as" in 38 C.F.R. § 4.130 demonstrates that the symptoms after that phrase are not intended to constitute an exhaustive list, but rather are to serve as examples of the type and degree of the symptoms, or their effects, that would justify a particular rating. Mauerhan v. Principi, 16 Vet. App. 436 (2002). A veteran may only qualify for a given disability rating under § 4.130 by demonstrating the particular symptoms associated with that percentage or others of similar severity, frequency, and duration. Vazquez-Claudio v. Shinseki, 713 F.3d 112, 118 (Fed. Cir. 2013). Other language in Vazquez-Claudio indicates that the phrase "others of similar severity, frequency, and duration," can be thought of as symptoms of like kind to those listed in the regulation for a given disability rating. Id. at 116.

If the evidence demonstrates that the claimant's psychiatric disorder produces symptoms and resulting occupational and social impairment equivalent to that set forth in the criteria for a given rating in the General Rating Formula, then the appropriate, equivalent rating will be assigned. Mauerhan, 16 Vet. App. at 443. In this regard, the Board must consider the frequency, severity, and duration of psychiatric symptoms, the length of remissions, and the veteran's capacity for adjustment during periods of remission. 38 C.F.R. § 4.126. While VA considers the level of social impairment, it shall not assign an evaluation based solely on social impairment. Id.

For purposes of considering the evidence in connection with the PTSD issue, the Board notes that the Global Assessment of Functioning (GAF) scale is a scale from 0 to 100, reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health illness." Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994) ("DSM-IV") (100 representing superior functioning in a wide range of activities and no psychiatric symptoms). See 38 C.F.R. §§ 4.125, 4.126, 4.130.

In this regard, the Board acknowledges that effective August 4, 2014, VA amended the regulations regarding the evaluation of mental disorders by removing outdated references to "DSM-IV," American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders, 4th Edition (1994). The amendments replace those references with references to the recently updated "DSM-5," and examinations conducted pursuant to the DSM-5 do not include GAF scores. 

A GAF of 41-50 denotes serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning. A GAF of 51-60 denotes moderate symptoms (e.g. flat affect, circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers). A GAF of 61-70 denotes some mild symptoms (e.g. depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g. occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships.

While an examiner's classification of the level of psychiatric impairment as reflected in a GAF score can be probative evidence, such a score is by no means determinative of the rating assigned by VA in evaluating a psychiatric disorder under the rating criteria. See 38 C.F.R. §§ 4.2, 4.126 (2017); VAOPGCPREC 10-95 (March 31, 1995). Rather, VA must take into account all of the Veteran's symptoms and resulting functional impairment as shown by the evidence of record in assigning the appropriate rating, and will not rely solely on the examiner's assessment of the level of disability at the time of examination. See 38 C.F.R. § 4.126.

The Board notes that in Golden v. Shulkin, No. 16-1208, Slip opinion at 5 (Vet. App. Feb. 23, 2018), the Court held that given that the DSM-5 abandoned the GAF scale and that VA has formally adopted the DSM-5, the Board errs when it uses GAF scores to assign a psychiatric rating in cases where the DSM-5 applies. However, the Court added that it does not hold that the Board commits prejudicial error every time the Board references GAF scores in a decision. This appeal was pending before the Board prior to August 4, 2014. As such, the DSM-IV applies and the GAF scores, prior to August 4, 2014, will be noted, as appropriate since much of the relevant evidence in this case was obtained during the time period that the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th ed.) (DSM-IV) was in effect.

The Veteran's service-connected PTSD is presently assigned a 70 percent rating from September 8, 1998.

The Board finds that the Veteran's symptoms of PTSD do not more nearly approximate a rating of 100 percent as they are not of such a severity or frequency to result in total occupational and social impairment. In this regard, there is no medical or lay evidence in the record of gross impairment in thought processes or communication; persistent delusions; grossly inappropriate behavior; inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; or memory loss for own occupation, or own name. Nor is there evidence of symptoms of like kind. Finally, the record does not show that the Veteran's PTSD has ever resulted in total occupational and social impairment. 

The Veteran underwent VA examinations in September 1997, May 1997, October 1999, and May 2003. The reports indicate no delusions, hallucinations, or suicidal or homicidal ideas.

In an August 2013 letter, the Veteran's private treating psychiatrist, Dr. L. notes a GAF score of 45. The examiner noted reported symptoms of recurrent traumatic memories, nightmares, avoidance of external cues, startle response, persistent negative emotional state, diminished interest and participation in family, social, or other activities, inability to experience positive emotions, irritable behavior, hypervigilance, chronic sleep disturbance, and concentration problems. He opined that the Veteran "has a total 100 percent and permanent psychiatric disability." While Dr. L. characterizes the Veteran's disability as "total 100 percent," the symptoms described and GAF score assigned more closely approximate the regulatory definition of a 70 percent rating under 38 U.S.C. § 4.130, DC 9411. However, Dr. L. does not describe the total occupational and social impairment characteristic of a 100 percent disability rating. Specifically, he notes that the Veteran has "diminished" interest and participation in family, social, and other activities, but not total absence of interest and participation.

In March 2015, the Veteran underwent a VA examination for PTSD. The examination report indicates that the Veteran's level of occupational and social impairment regarding his mental diagnosis was occupational and social impairment with reduced reliability and productivity. The examination report indicates that the Veteran reported living with his wife since 1994 and that he maintains "good" marital and paternal relationships. The examiner noted that there was no report or documentation of significant interpersonal relational difficulties. The examiner noted that the Veteran reported that he has been occasionally "hearing voices calling [his] name." However, the examiner noted that the Veteran was in full contact with reality and there was no evidence of delusion and no evidence of hallucinations. The Veteran denied suicidal or homicidal ideations or plans. The examiner noted that while the Veteran presented some recent memory difficulties, other cognitive functions were preserved. 

In a psychological assessment report received in January 2016, a private psychologist, Dr. L.C.R. noted that the Veteran has persistent hallucinations and recurring suicidal ideation. The psychologist opined that the Veteran's PTSD symptoms rendered him totally unemployable and socially impaired since 1996.

The Veteran underwent a VA examination for PTSD in February 2016. The examiner noted occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress, or; symptoms controlled by medication. The examiner noted that the Veteran's "PTSD symptoms that interfere with a substantially gainful employment are anxiety, irritability, and sleep difficulties. These symptoms prevent Veteran from keeping a specific schedule, interacting appropriately with peers/clients and completing normal workday tasks at a gainful employment."

In the February 2016 appellant's brief, the Veteran's representative at the time noted that "the evidence strongly supports the assignment of a total rating (either 100 percent or TDIU) for PTSD from September 9, 1998 onward." The brief indicates that the relationship between the Veteran and his wife is not a healthy one. The brief also notes that the Veteran has had violent thoughts and behaviors direct toward others and has suffered from recurring suicidal ideation. The Veteran's representative noted that the Veteran has experienced persistent auditory hallucinations with occasional visual hallucinations.

VA treatment records received in February 2018 include a February 2, 2017 record where the Veteran reported persistent auditory hallucinations and nightmares. The Veteran denied suicidal and/or homicidal ideations. In subsequent records, on February 13, 2017 and June 16, 2017, the Veteran denied "hallucinations, suicidal ideas, or toxic habits."

Medical evidence does not show that the Veteran's symptoms have been of the type and degree contemplated by the criteria for a 100 percent disability rating.

While the record shows recurrent suicidal ideation throughout the appeal period and a few incidents of homicidal ideation in the late 1990s, the Veteran has not had defined plans to attempt harm to himself or others. The record indicates that the Veteran was hospitalized once in November 2009 for "exacerbation of mood and anxiety symptoms associated to self-harm ideation." The discharge treatment record indicated that the Veteran "reliably denies any suicidal or homicidal ideation or intentions, and denies any auditory or visual hallucinations. There is no delusional influence to make him a danger to self or others at present." He continued to deny suicidal or homicidal ideation throughout the hospitalization.

Evidence during this period shows that the Veteran is socially isolated, preferring to spend his time at home and having no friends. Interactions with the public and coworkers are shown to be problematic and a neighbor reported hostility and aggressive behavior. Lay statements from his wife and daughter reflect a strained and sometimes violent home environment; however his wife is also noted in several treatment records to be an adequate support system, accompanying the Veteran to his medical appointments. Thus, while the evidence shows difficulty establishing and maintaining effective relationships, it does not reflect the total social impairment contemplated by a 100 percent disability rating.

The record shows recurring audio hallucinations of voices. While this can be a symptom consistent with a 100 percent rating, the symptoms listed in the criteria for disability ratings are not intended to constitute an exhaustive list, but rather are to serve as examples of the type and degree of the symptoms, or their effects, that would justify a particular rating. Mauerhan. Here, the Board does not find that the symptom of persistent audio hallucinations is sufficient, standing alone, to warrant a higher rating of 100 percent in light of the fact that the Veteran's overall disability picture does not most closely approximate total occupational and social impairment. In other words, the preponderance of evidence shows that the hallucinations do not result in total occupational and social impairment. 

Based on the foregoing, the Board finds that the evidence is against granting an initial disability rating higher than 70 percent for the Veteran's PTSD. While he has had symptoms of anxiety, depression, sleep impairment, and reported some auditory hallucinations, the evidence does not show that the Veteran has had grossly inappropriate behavior or that there is a persistent danger of hurting himself or others. The Veteran has not had memory loss such as contemplated by the 100 percent rating. The Veteran has consistently denied suicidal or homicidal thoughts or ideation and has also denied experiencing delusions or hallucinations. Gross impairment in thought processes or communication is not shown. While the Veteran was granted TDIU, indicating that it was at least due in part to the Veteran's PTSD, the record does not show total social impairment, or for that matter total occupational impairment. 

The preponderance of the evidence is against the claim for a rating higher than 70 percent for the Veteran's PTSD. The benefit-of-the-doubt doctrine is not applicable and the claim must be denied. 38 U.S.C. § 5107(b) (2012); Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990).

The Board notes that in the April 2016 rating decision, the RO granted TDIU effective September 9, 1998.

The Board has considered whether referral for an extraschedular rating under 38 C.F.R. § 3.321(b)(1) is warranted in this case. The Board finds that the Veteran's symptoms of PTSD are contemplated by the schedular rating criteria. Neither the facts of the case nor the Veteran's allegations raise the issue of extraschedular consideration. Thus, no analysis is required. See Yancy v. McDonald, 27 Vet. App. 484, 494 (2017) (holding that an extraschedular analysis is not warranted where it is not "specifically sought by the claimant nor reasonably raised by the facts found by the Board") (citing Dingess v. Nicholson, 19 Vet. App. 473, 499 (2006), aff'd, 226 Fed. Appx. 1004 (Fed. Cir. 2007). See also Doucette v. Shulkin, 28 Vet. App. 366, 369 (2017).



 (CONTINUED ON NEXT PAGE)




ORDER

A rating in excess of 70 percent for PTSD is denied.



____________________________________________
JAMES G. REINHART
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs